COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
PETER S. PEARLMAN
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
MATTHEW P. MONTGOMERY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| KAREN M. BAUER, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | CLASS ACTION |
| vs. | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| PRUDENTIAL FINANCIAL, INC., ARTHUR F. RYAN, RICHARD J. CARBONE, PETER B. SAYRE, DENNIS G. SULLIVAN, FREDERIC K. BECKER, GORDON M. BETHUNE, GASTON CAPERTON, GILBERT F. CASELLAS, JAMES G. CULLEN, WILLIAM H. GRAY III, | DEMAND FOR JURY TRIAL |

[Caption continued on following page.]

JON F. HANSON, CONSTANCE J. )
HORNER, KARL J. KRAPEK, JAMES )
A. UNRUH, CITIGROUP GLOBAL )
MARKETS INC., MERRILL LYNCH, )
PIERCE, FENNER & SMITH )
INCORPORATED, MORGAN )
STANLEY & CO. INCORPORATED, )
UBS SECURITIES LLC, WACHOVIA )
CAPITAL MARKETS, LLC, BANC )
OF AMERICA SECURITIES LLC, )
RBC CAPITAL MARKETS )
CORPORATION, J.P. MORGAN )
SECURITIES INC. and )
PRICEWATERHOUSECOOPERS )
LLP, )
)
Defendants. )
)

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons who acquired depositary shares of the 9% Junior Subordinated Notes (the "Securities") of Prudential Financial, Inc. ("Prudential" or the "Company") pursuant and/or traceable to a false and misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's June 2008 initial public offering of the Securities (the "Offering"). This action asserts strict liability claims under the Securities Act of 1933 ("1933 Act") against Prudential, its officers and/or directors, its auditors, and the investment banks which underwrote the Offering (collectively, "defendants").

2. Prudential is a financial services company that offers a variety of products, including life insurance, annuities, retirement-related services, mutual funds, investment management and real estate services.

3. Defendants consummated the Offering pursuant to the false and misleading Registration Statement, selling 36.8 million shares of the Securities at $25 per share, for proceeds of over $920 million. The Registration Statement incorporated Prudential's financial results for 2007 and the first quarter of 2008.

4. Prudential ultimately announced huge writedowns associated with its exposure to subprime mortgages and the goodwill on the Company's books associated with certain of its subsidiaries, causing the price of the Securities to decline.

5. The true facts which were omitted from the Registration Statement were:

(a) The Company's asset-backed securities collateralized with subprime mortgages were impaired to a greater extent than the Company had disclosed;

(b) The Company's goodwill associated with certain of its subsidiaries was impaired to a greater extent than the Company had disclosed;

(c) Defendants failed to properly record losses for impaired assets; and

(d) The Company's internal controls were inadequate to prevent the Company from improperly reporting its impaired assets.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under and pursuant to §§11, 12(a)(2) and 15 of the 1933 Act, 15 U.S.C. §§77k, 77l(a)(2) and 77o.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the 1933 Act.

8. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), because Prudential maintains offices in this District, the Underwriter Defendants conduct business in this District, and many of the acts and practices complained of herein occurred in substantial part in this District.

9. In connection with the acts alleged in this Complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

10. Plaintiff Karen M. Bauer residing at 17818 Stoneridge Drive, North Potomac, Maryland acquired the Securities pursuant or traceable to the Offering and has been damaged thereby.

11. Defendant Prudential is a financial services company that offers a variety of products, including life insurance, annuities, retirement-related services, mutual funds, investment management and real estate services. It is headquartered in Newark, New Jersey.

12. Defendant Arthur F. Ryan ("Ryan") was, at relevant times, Chairman, Chief Executive Officer and a director of the Company. Ryan signed the false and misleading Registration Statement.

13. Defendant Richard J. Carbone ("Carbone") was, at relevant times, Senior Vice President and Chief Financial Officer of the Company. Carbone signed the false and misleading Registration Statement.

14. Defendant Peter B. Sayre ("Sayre") was, at relevant times, Controller of the Company. Sayre signed the false and misleading Registration Statement.

15. Defendant Dennis G. Sullivan ("Sullivan") was, at relevant times, Vice President (Principal Accounting Officer) of the Company. Sullivan signed the false and misleading Registration Statement.

16. Defendant Frederic K. Becker ("Becker") was, at relevant times, a director of the Company. Becker signed the false and misleading Registration Statement.

17. Defendant Gordon M. Bethune ("Bethune") was, at relevant times, a director of the Company. Bethune signed the false and misleading Registration Statement.

18. Defendant Gaston Caperton ("Caperton") was, at relevant times, a director of the Company. Caperton signed the false and misleading Registration Statement.

19. Defendant Gilbert F. Casellas ("Casellas") was, at relevant times, a director of the Company. Casellas signed the false and misleading Registration Statement.

20. Defendant James G. Cullen ("Cullen") was, at relevant times, a director of the Company. Cullen signed the false and misleading Registration Statement.

21. Defendant William H. Gray III ("Gray") was, at relevant times, a director of the Company. Gray signed the false and misleading Registration Statement.

22. Defendant Jon F. Hanson ("Hanson") was, at relevant times, a director of the Company. Hanson signed the false and misleading Registration Statement.

23. Defendant Constance J. Horner ("Horner") was, at relevant times, a director of the Company. Horner signed the false and misleading Registration Statement.

24. Defendant Karl J. Krapek ("Krapek") was, at relevant times, a director of the Company. Krapek signed the false and misleading Registration Statement.

25. Defendant James A. Unruh ("Unruh") was, at relevant times, a director of the Company. Unruh signed the false and misleading Registration Statement.

26. The defendants referenced above in ¶¶12-25 are referred to herein as the "Individual Defendants."

27. Defendant Citigroup Global Markets Inc. ("Citigroup Global") is the brokerage and securities arm of Citigroup. Citigroup Global was an underwriter for the Offering.

28. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking, and related products and services on a global basis. Merrill Lynch was an underwriter for the Offering.

29. Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals. Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley was an underwriter for the Offering.

30. Defendant UBS Securities LLC ("UBS") provides a range of financial products and services worldwide. UBS was an underwriter for the Offering.

31. Defendant Wachovia Capital Markets, LLC ("Wachovia") provides a range of financial products and services worldwide. Wachovia was an underwriter for the Offering.

32. Defendant Banc of America Securities LLC ("Banc of America") is the investment banking arm of Bank of America. Banc of America offers trading and brokerage services, debt and securities underwriting, debt and equity research, and advice on public offerings, leveraged buyouts, and mergers and acquisitions. Banc of America was an underwriter for the Offering.

33. Defendant RBC Capital Markets Corporation ("RBC") is the corporate and investment banking division of Royal Bank of Canada. RBC was an underwriter for the Offering.

34. Defendant J.P. Morgan Securities Inc. ("J.P. Morgan") is a subsidiary of JPMorgan Chase & Co., a leading global financial services firm with assets of $2.2 trillion. The firm is a leader in investment banking, financial services for consumers, small business and commercial banking, financial transaction processing, asset management and private equity. J.P. Morgan was an underwriter for the Offering.

35. Pursuant to the 1933 Act, the defendants referenced in ¶¶27-34 above are referred to herein as the "Underwriter Defendants."

36. The Underwriter Defendants are ***liable*** for the false and misleading statements in the Registration Statement. In connection with the Offering, the Underwriter Defendants drafted and disseminated the Registration Statement and were paid fees in connection therewith. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

37. Defendant PricewaterhouseCoopers LLP ("PwC") is an audit, tax and advisory firm that served as Prudential's auditor during the relevant period and, with its consent, was named as having certified a portion of the Registration Statement, as well as the financial statements in Prudential's Form 10-K for 2007.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons or entities who acquired the Securities pursuant or traceable to the Company's false and misleading Registration Statement for the Offering and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

39. The members of the Class are so numerous that joinder of all members is impracticable. The Securities were actively traded on the NYSE. While the exact

number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Prudential or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

40. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

41. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

42. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are: whether the 1933 Act was violated by defendants' acts as alleged herein; whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and management of Prudential; and to what extent the members of the Class have sustained damages and the proper measure of damages.

43. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**THE FALSE AND DEFECTIVE REGISTRATION STATEMENT AND PROSPECTUS**

44. On or about March 16, 2006, Prudential filed with the Securities and Exchange Commission ("SEC") a Form S-3 Registration Statement and Prospectus using a "shelf" registration or continuous offering process. Under the shelf, Prudential would be permitted to sell securities described in various prospectus supplements in one or more offerings. The prospectus supplements would form part of the Registration Statement for each offering. The securities were to be issued by Prudential. The Form S-3 stated:

> The SEC allows us to incorporate by reference the information we file with it, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is an important part of this prospectus, and information that we file later with the SEC will automatically update and supersede this information. Information furnished under the applicable items of our Current Reports on Form 8-K is not incorporated by reference in this registration statement and prospectus, unless specifically stated in a prospectus supplement. We incorporate by reference the documents listed below and filings that we will make after the date of filing the initial registration statement and prior to the effectiveness of the registration statement, and any future filings made by us with the SEC

> under Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended, which we refer to as the "Exchange Act" . . . .

45. On, February 27, 2008, Prudential filed its Form 10-K with the SEC for the year 2007. This Form 10-K was incorporated by reference into the Registration Statement. The Form 10-K reported net income for 2007 of $3.7 billion, assets of $485.8 billion, and stockholder equity of $23.5 billion. The Form 10-K also included the following statement by PwC:

> REPORT OF INDEPENDENT REGISTERED PUBLIC ACCOUNTING FIRM
>
> To the Board of Directors and Stockholders of Prudential Financial, Inc.:
>
> In our opinion, the consolidated financial statements listed in the accompanying index present fairly, in all material respects, the financial position of Prudential Financial, Inc. and its subsidiaries at December 31, 2007 and December 31, 2006 and the results of their operations and their cash flows for each of the three years in the period ended December 31, 2007 in conformity with accounting principles generally accepted in the United States of America. In addition, in our opinion, the financial statement schedules listed in the index appearing under Item 15.2 present fairly, in all material respects, the information set forth therein when read in conjunction with the related consolidated financial statements. Also in our opinion, the Company maintained, in all material respects, effective internal control over financial reporting as of December 31, 2007, based on criteria established in *Internal Control – Integrated Framework* issued by the Committee of Sponsoring Organizations of the Treadway Commission (COSO). The Company's management is responsible for these financial statements and financial statement schedules, for maintaining effective internal control over financial reporting and for its assessment of the effectiveness of internal control over financial reporting, included in Management's Annual Report on Internal Control Over Financial Reporting, listed in the accompanying index. Our responsibility is to express opinions on these financial statements, on the financial statement schedules, and on the Company's internal control over financial reporting based on our integrated audits.

We conducted our audits in accordance with the standards of the Public Company Accounting Oversight Board (United States). Those standards require that we plan and perform the audits to obtain reasonable assurance about whether the financial statements are free of material misstatement and whether effective internal control over financial reporting was maintained in all material respects. Our audits of the financial statements included examining, on a test basis, evidence supporting the amounts and disclosures in the financial statements, assessing the accounting principles used and significant estimates made by management, and evaluating the overall financial statement presentation. Our audit of internal control over financial reporting included obtaining an understanding of internal control over financial reporting, assessing the risk that a material weakness exists, and testing and evaluating the design and operating effectiveness of internal control based on the assessed risk. Our audits also included performing such other procedures as we considered necessary in the circumstances. We believe that our audits provide a reasonable basis for our opinions.

* * *

A company's internal control over financial reporting is a process designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles. A company's internal control over financial reporting includes those policies and procedures that (i) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the company; (ii) provide reasonable assurance that transactions are recorded as necessary to permit preparation of financial statements in accordance with generally accepted accounting principles, and that receipts and expenditures of the company are being made only in accordance with authorizations of management and directors of the company; and (iii) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use, or disposition of the company's assets that could have a material effect on the financial statements.

* * *

/S/ PRICEWATERHOUSECOOPERS LLP
New York, New York
February 27, 2008

46. The Registration Statement further incorporated by reference Prudential's Form 10-Q filed with the SEC on May 1, 2008 for the quarter ended March 31, 2008. That Form 10-Q stated:

> Prudential Financial, one of the largest financial services companies in the U.S., offers individual and institutional clients a wide array of financial products and services, including life insurance, annuities, mutual funds, pension and retirement-related services and administration, investment management, real estate brokerage and relocation services, and, through a joint venture, retail securities brokerage services. We offer these products and services through one of the largest distribution networks in the financial services industry.
>
> During the latter half of 2007 and continuing through the first quarter 2008, dislocations in the credit and capital markets, initially driven by broad market concerns over the impact of sub-prime mortgage holdings of financial institutions, have generally resulted in increased cost of credit for financial institutions in the marketplace. While credit has generally become more expensive, Prudential Financial's ability to access the capital markets has not been materially impacted.

47. The Form 10-Q reported net income of $69 million, assets of $478.3 billion, and total stockholders' equity of $22.7 billion.

48. On or about June 24, 2008, Prudential filed its Prospectus Supplement for the Offering, which forms part of the Registration Statement and pursuant to which Prudential sold 36.8 million shares of the Securities to the public at $25 per share. The Prospectus Supplement stated:

> The SEC allows us to incorporate by reference the information we file with it, which means that we can disclose important information to you by referring you to those documents. The information incorporated by reference is an important part of this prospectus, and information that we file later with the SEC will automatically update and supersede this information. Information furnished under the applicable items of our

> Current Reports on Form 8-K is not incorporated by reference in this registration statement and prospectus, unless specifically stated in a prospectus supplement. We incorporate by reference the documents listed below and filings that we will make after the date of filing the initial registration statement and prior to the effectiveness of the registration statement, and any future filings made by us with the SEC under Sections 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934, as amended, which we refer to as the "Exchange Act" . . . .

49. The Registration Statement/Prospectus Supplement contained untrue statements of material fact or omitted to state other facts necessary to make the statements made therein not misleading and was not prepared in accordance with applicable SEC rules and regulations. Specifically, the Registration Statement/ Prospectus Supplement failed to disclose that:

(a) The Company's asset-backed securities collateralized with subprime mortgages were impaired to a greater extent than the Company had disclosed;

(b) The Company's goodwill associated with certain of its subsidiaries was impaired to a greater extent than the Company had disclosed;

(c) Defendants failed to properly record losses for impaired assets; and

(d) The Company's internal controls were inadequate to prevent the Company from improperly reporting its impaired assets.

**POST-OFFERING EVENTS**

50. On February 4, 2009, the Company issued press release entitled "Prudential Financial, Inc. Announces 2008 Results," which stated in part:

Prudential Financial, Inc. today reported a net loss for its Financial Services Businesses of $1.096 billion ($2.42 per Common share) for the year ended December 31, 2008, compared to net income of $3.512 billion ($7.61 per Common share) for 2007. After-tax adjusted operating income for the Financial Services Businesses was $1.117 billion ($2.69 per Common share) for 2008, compared to $3.322 billion ($7.21 per Common share) for 2007. Adjusted operating income is a non-GAAP measure as discussed below, which includes charges in the fourth quarter of 2008 for writeoffs of goodwill and declines in value of investments in certain operating joint ventures amounting to approximately $1.32 per Common share.

For the fourth quarter of 2008, the Financial Services Businesses reported a net loss of $1.640 billion ($3.85 per Common share), compared to net income of $792 million ($1.75 per Common share) for the fourth quarter of 2007. The Financial Services Businesses reported a loss, based on after-tax adjusted operating income, of $878 million ($2.04 per Common share) for the fourth quarter of 2008, compared to after-tax adjusted operating income of $787 million ($1.74 per Common share) for the fourth quarter of 2007.

* * *

The **U.S. Retirement Solutions and Investment Management division** reported a loss, on an adjusted operating income basis, of $975 million for the fourth quarter of 2008, compared to adjusting operating income of $500 million in the year-ago quarter.

* * *

. . . [T]he current quarter loss includes a charge of $97 million to write off the entire balance of goodwill associated with the Company's acquisition of Allstate's variable annuity business in 2006.

* * *

**Corporate and Other operations** re sulted in a loss, on an adjusted operating income basis, of $264 million in the fourth quarter of 2008, compared to a loss of $52 million in the year-ago quarter. The current quarter loss includes a charge of $117 million to write off the entire balance of goodwill for the Company's real estate and relocation business. . . .

**Assets under management** amounted to $558 billion at December 31, 2008, compared to $648 billion a year earlier.

The **net loss** of the Financial Services Businesses amounted to $1.640 billion for the fourth quarter of 2008, compared to net income of $792 million in the year-ago quarter.

The current quarter net loss includes $511 million of pre-tax net realized investment losses and related charges and adjustments. Net realized investment losses in the current quarter include $1.192 billion of losses from impairments and sales of credit-impaired investments and $304 million representing decreases in market value of certain externally managed investments in the European market. The losses from impairments and sales of credit-impaired securities reflect $570 million on fixed maturity investments, including $214 million relating to asset-backed securities collateralized by sub-prime mortgages, and $601 million of impairments on equity securities. . . .

. . . Gross unrealized losses include $1.781 billion related to asset-backed securities collateralized by sub-prime mortgages.

51. On February 5, 2009, on the Company's fourth quarter 2008 earnings conference call, defendant Carbone made the following statements:

The impairments of goodwill and joint venture investments amounted to $653 million on a pretax basis. This charge reflects the write-off of the entire balances of goodwill for three areas – the variable annuity business we acquired from Allstate, our international investments business and our real estate and relocation business, as well as a portion of our operating and joint venture investment in our international investments business.

* * *

The $1.2 billion of impairments and credit-related losses on sales included $570 million for fixed maturities, $601 million for the equities, and $21 million from other investments. The $570 million for fixed maturities reflected $506 million of impairments, including $400 million that were credit-related, and $64 million for sales of credit-impaired securities. $214 million of these losses were on subprime paper, with the remainder primarily on corporate holdings in services, manufacturing

> and finance sectors. The credit-related impairments and losses on sales totaling about $460 million compared to a range of $300 million to $400 million that we had estimated for credit losses on our Investor Day back in December.
>
> * * *
>
> Roughly $1.8 billion of total gross unrealized losses at year-end relates to subprime holdings, an increase of $600 million from the third quarter, as the market for these securities weakened when expected government purchases under the TARP program failed to materialize, and the residential housing market continued to decline.

52. On February 10, 2009, *Bloomberg* announced in a press release:

> Prudential Financial Inc., the second-largest U.S. life insurer, may be downgraded by Moody's Investors Service after two straight quarterly losses.
>
> "Depressed equity markets will not only increasingly raise the cost of the variable annuity business for the company, but could also result in additional impairments," the ratings firm said today in a statement on the Newark, New Jersey-based insurer.

53. In response to these disclosures, the price of the Securities declined from $21.30 on February 9, 2009 to $20.10 the next day, a 5.6% drop.

54. On February 19, 2009, *BusinessWire* published an article entitled "Fitch Downgrades Prudential Financial's Ratings; Outlook Negative," which stated in part:

> Fitch Ratings has downgraded Prudential Financial, Inc.'s senior unsecured debt rating to 'BBB' from 'A-' and commercial paper rating to 'F2' from 'F1', as well as the insurer financial strength (IFS) ratings of PRU's primary domestic life insurance subsidiaries to 'A+' from 'AA-'. The Rating Outlook is Negative. . . .
>
> Today's ratings actions reflect Fitch's updated review of PRU's exposure to the volatile credit and investment market conditions, which are negatively impacting its investment results, earnings performance and capital levels.

* * *

> In addition, PRU has an above average exposure to subprime residential mortgage-backed securities and commercial mortgage backed securities relative to peers.

55. In response to these disclosures, the price of the Securities declined from $19.35 on February 18, 2009 to $16.09 the next day, a 17% drop.

## COUNT I

### Violations of Section 11 of the 1933 Act Against All Defendants

56. Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

57. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

58. The Registration Statement was false and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

59. Prudential is the registrant for the Offering. As issuer of the shares, Prudential is strictly liable to plaintiff and the Class for the misstatements and omissions.

60. The Individual Defendants named in this Count were responsible for the contents and dissemination of the Registration Statement. Each of the Individual Defendants named in this Count signed or authorized the signing of the Registration Statement or were identified in the Prospectus.

61. The Underwriter Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

62. PwC acted as Prudential's auditor and was named by consent as having certified a part of the Registration Statement as well as Prudential's financial results included in its 2007 Form 10-K.

63. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

64. By reason of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

65. Plaintiff acquired the Securities pursuant and/or traceable to the Registration Statement for the Offering.

66. Plaintiff and the Class have sustained damages. At the time of their purchases of the Securities, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to mid-2008. Less than one year has

elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based and the time plaintiff filed this Complaint. Less than three years has elapsed between the time that the Securities upon which this Count is brought were offered to the public and the time plaintiff filed this Complaint.

## COUNT II

### Violations of Section 12(a)(2) of the 1933 Act Against Prudential and the Underwriter Defendants

67. Plaintiff repeats and realleges the allegations set forth above as if set forth fully herein. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

68. By means of the defective Prospectus, the defendants named herein assisted in the sale of shares of the Securities to plaintiff and other members of the Class.

69. The Prospectus contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants named herein owed plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission to state a material fact required to be stated in order to

make the statements contained therein not misleading. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the Prospectus as set forth above.

70. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus at the time plaintiff acquired the Securities.

71. By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the 1933 Act, 15 U.S.C. §771(a)(2). As a direct and proximate result of such violations, plaintiff and the other members of the Class who purchased the Securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the Securities. Accordingly, plaintiff and the other members of the Class who hold such shares have the right to rescind and recover the consideration paid for their shares, and hereby tender their shares to the defendants sued herein. Class members who have sold their shares seek damages to the extent permitted by law.

**COUNT III**

**Violations of Section 15 of the 1933 Act**
**Against the Individual Defendants**

72. Plaintiff repeats and realleges each and every allegation contained above. For purposes of this Count, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this

Count is based solely on claims of strict liability and/or negligence under the 1933 Act.

73. This Count is brought pursuant to §15 of the 1933 Act, 15 U.S.C. §77o, against the Individual Defendants.

74. Each of the Individual Defendants was a control person of Prudential by virtue of his or her position as a director, senior officer and/or major shareholder of Prudential which allowed each of these defendants to exercise control over Prudential and its operations.

75. Each of the Individual Defendants was a culpable participant in the violations of §11 of the 1933 Act alleged in the Count above, based on their having signed or authorized the signing of the Registration Statement and having otherwise participated in the process which allowed the Offering to be successfully completed.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying plaintiff as a Class representative;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D. Awarding rescission or a rescissory measure of damages; and

E. Such equitable/injunctive or other relief as deemed appropriate by the Court.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: March 12, 2009

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
PETER S. PEARLMAN

*s/ Peter S. Pearlman*
PETER S. PEARLMAN

Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201/845-9600
201/845-9423 (fax)

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
MATTHEW P. MONTGOMERY
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt Prudential Financial.doc

# CERTIFICATION OF NAMED PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

KAREN M. BAUER ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 06/24/08 | 400 shares | $25.00 |
| | | |
| | | |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |
| | | |
| | | |

5. Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

6. The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10th day of March, 2009.

Karen M. Bauer

KAREN M. BAUER