**LITE DEPALMA GREENBERG & RIVAS, LLC**
Joseph J. DePalma
Katrina Carroll
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@ldgrlaw.com
*Liaison Counsel for Lead Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

***DOCUMENT ELECTRONICALLY FILED***

| | |
|---|---|
| KAREN M. BAUER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>PRUDENTIAL FINANCIAL, INC., et al.<br><br>Defendants. | Civil Action No. 09-1120-JLL<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |
| NOAH HADDOCK, Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>Vs.<br><br>PRUDENTIAL FINANCIAL, INC., et al.<br><br>Defendants. | Civil Action No. 09-1771-JLL |

Court-appointed Lead Plaintiff Paul J. Perry, Trustee of the Paul J. Perry Revocable Trust ("Plaintiff"), residing at 822 Springfield Drive, Northville, MI, alleges the following based upon the investigation by Plaintiff's counsel.

**INTRODUCTION**

1. This is a securities class action for violations of the Securities Act of 1933 (the "Securities Act"). Plaintiff brings this action on behalf of himself and all other persons who purchased the 9% Junior Subordinated Notes of Prudential Financial, Inc. ("Prudential") (the "Securities" or "Notes") pursuant to and/or traceable to a false and misleading registration statement and prospectus issued in connection with Prudential's June 24, 2008 initial public offering of the Securities. The Securities Act claims asserted herein involve strict liability and negligence claims, and do not sound in or arise from allegations of fraud.

2. Prudential is a financial services company with operations in the United States and around the world. Prudential's businesses offer a variety of products and services, including life insurance, annuities, retirement-related services, mutual funds, investment management, and real estate services.

3. On or about June 24, 2008, Prudential conducted an initial public offering of the Securities (the "IPO" or the "Offering") that raised over $920 million by selling 36.8 million Notes of the Securities at a price of $25 per Note. As more particularly alleged below, Defendants sold the Securities in the Offering by means of a false and misleading registration statement and prospectus which, as alleged below, (i) misrepresented that Prudential was not subject to litigation or regulatory investigations concerning, and concealed Prudential's contingent $235 million liability arising out of, the collapse of the market for auction rate securities; (ii) materially understated the actual amount of Prudential's $380 million liability in connection with its annuity obligations and deferred acquisition costs; and (iii) materially understated by approximately $205 million the amount of Prudential's "other than temporary impairments" as of March 31, 2008, by

failing to account for the decrease in the value of the Company's asset-backed fixed maturity securities that had decreased in value more than 50%. As further alleged below, these material misrepresentations cumulatively resulted in an approximately $820 million overstatement of pre-tax income reported in the registration statement and prospectus at issue. The financial statements reported net income of $69 million; had the financial statements not contained these material overstatements, the registration statement and prospectus would have reported a net ***loss*** of as much as ***$454 million***.

**JURISDICTION AND VENUE**

4. The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k, 77l(a)(2) and 77o).

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and § 22 of the Securities Act (15 U.S.C. §77v).

6. Venue is proper in this District pursuant to 28 U.S.C. § 1381(b) and §22 of the Securities Act. Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District. In addition, Prudential's principal executive offices are located within this District, and the Underwriter Defendants (as defined below) maintain offices in this District.

7. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

**PARTIES**

8. As set forth in the Certification of Named Plaintiff previously filed with this Court, Lead Plaintiff Paul J. Perry, Trustee of the Paul J. Perry Revocable Trust, purchased Securities pursuant to or traceable to the registration statement and prospectus filed in connection with the Offering and has been damaged thereby.

9. Defendant Prudential is a financial services company that offers a variety of products, including life insurance, annuities, retirement-related services, mutual funds, investment management and real estate services. It is headquartered and maintains its principal executive offices at 751 Broad Street, Prudential Plaza, Newark, New Jersey.

10. Defendant Arthur F. Ryan ("Ryan") was, at relevant times, Chairman, Chief Executive Officer and a director of the Company. Ryan signed the false and misleading Registration Statement.

11. Defendant Richard J. Carbone ("Carbone") was, at relevant times, Senior Vice President and Chief Financial Officer of the Company. Carbone signed the false and misleading Registration Statement.

12. Defendant Peter B. Sayre ("Sayre") was, at relevant times, Controller of the Company. Sayre signed the false and misleading Registration Statement.

13. Defendant Dennis G Sullivan ("Sullivan") was, at relevant times, Vice President (Principal Accounting Officer) of the Company. Sullivan signed the false and misleading Registration Statement.

14. Defendant Frederic K. Becker ("Becker") was, at relevant times, a director of the Company. Becker signed the false and misleading Registration Statement.

15. Defendant Gordon M. Bethune ("Bethune") was, at relevant times, a director of the Company. Bethune signed the false and misleading Registration Statement.

16. Defendant Gaston Caperton ("Caperton") was, at relevant times, a director of the Company. Caperton signed the false and misleading Registration Statement.

17. Defendant Gilbert F. Casellas ("Casellas") was, at relevant times, a director of the Company. Casellas signed the false and misleading Registration Statement.

18. Defendant James G. Cullen ("Cullen") was, at relevant times, a director of the Company. Cullen signed the false and misleading Registration Statement.

19. Defendant William H. Gray III ("Gray") was, at relevant times, a director of the Company. Gray signed the false and misleading Registration Statement.

20. Defendant Jon F. Hanson ("Hanson") was, at relevant times, a director of the Company. Hanson signed the false and misleading Registration Statement.

21. Defendant Constance J. Horner ("Horner") was, at relevant times, a director of the Company. Horner signed the false and misleading Registration Statement.

22. Defendant Karl J. Krapek ("Krapek") was, at relevant times, a director of the Company. Krapek signed the false and misleading Registration Statement.

23. Defendant James A. Unruh ("Unruh") was, at relevant times, a director of the Company. Unruh signed the false and misleading Registration Statement.

24. The defendants referenced above in ¶¶10-23 are referred to herein as the "Individual Defendants."

25. Defendant Citigroup Global Markets Inc. ("Citigroup Global") is the brokerage and securities arm of Citigroup. Citigroup Global was an underwriter for the Offering.

26. Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") provides capital markets services, investment banking and advisory services, wealth management, asset management, insurance, banking, and related products and services on a global basis. Merrill Lynch was an underwriter for the Offering.

27. Defendant Morgan Stanley & Co. Incorporated ("Morgan Stanley") is a global financial services firm that, through its subsidiaries and affiliates, provides its products and services to customers, including corporations, governments, financial institutions and individuals. Morgan Stanley assists public and private corporations in raising funds in the capital markets (both equity and debt), as well as in providing strategic advisory services for mergers, acquisitions and other types of financial transactions. Morgan Stanley was an underwriter for the Offering.

28. Defendant UBS Securities LLC ("UBS") provides a range of financial products and services worldwide. UBS was an underwriter for the Offering.

29. Defendant Wachovia Capital Markets, LLC ("Wachovia") provides a range of financial products and services worldwide. Wachovia was an underwriter for the Offering.

30. Defendant Banc of America Securities LLC ("Banc of America") is the investment banking arm of Bank of America. Banc of America offers trading and brokerage services, debt and securities underwriting, debt and equity research, and advice on public offerings, leveraged buyouts, and mergers and acquisitions. Banc of America was an underwriter for the Offering.

31. Defendant RBC Capital Markets Corporation ("RBC") is the corporate and investment banking division of Royal Bank of Canada. RBC was an underwriter for the Offering.

32. Defendant J.P. Morgan Securities Inc. (J.P. Morgan") is a subsidiary of JPMorgan Chase & Co., a leading global financial services firm with assets of $2.2 trillion. The firm is a leader in investment banking, financial services for consumers, small business and commercial

banking, financial transaction processing, asset management and private equity. J.P. Morgan was an underwriter for the Offering.

33. The defendants referenced in ¶¶25-32 above are referred to herein as the "Underwriter Defendants."

## CLASS ACTION ALLEGATIONS

34. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class consisting of all purchasers of the Securities pursuant or traceable to the Company's false and misleading Registration Statement for the Offering and who were damaged thereby, exclusive of Defendants, all officers and directors of any of the Defendants or their subsidiaries, members of Defendants' immediate families, any entity in which any Defendant has a controlling interest, and the legal representatives, heirs, successors, or assigns of any such excluded person, including all of the underwriters in the IPO when acting in such capacity (hereinafter, the "Class")

35. The members of the Class are so numerous that joinder of all members in impracticable. The Securities were actively traded on the NYSE. Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Prudential or its transfer agent and may be easily notified of the pendency of this action.

36. Plaintiff's claims are typical of the claims of the other members of the Class, because the damages suffered by Plaintiff and all other Class Members arise from and were caused by the same misrepresentations and omissions made by or chargeable to Defendants as alleged herein.

37. Common questions of law or fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law or fact common to the Class are:

a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

b. whether the Defendants misrepresented and/or failed to disclose material facts in the Registration Statement and Prospectus, as described below;

c. whether the Individual Defendants are "controlling persons" of Prudential within the meaning of Section 15 of the Securities Act;

d. whether the members of the Class have sustained damages, and, if so, the proper measure of such damages.

38. Plaintiff will fairly and adequately protect the interests of the other members of the Class, Plaintiff does not have interests antagonistic to, or in conflict with, the Class, and Plaintiff has retained counsel competent and experienced in class and securities litigation to further ensure such protection and intend to prosecute this action vigorously.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is so numerous and geographically dispersed that it would be impracticable for each member of the Class to bring a separate action or to be joined in an individual action. The individual damages of any member of the Class may be relatively small when measured against the potential costs of bringing this action, and thus make the expense and burden of this litigation unjustifiable for individual actions. In this class action, the Court can determine the rights of all members of the Class with judicial economy.

## SUBSTANTIVE ALLEGATIONS

### The Registration Statement

40. On or about March 16, 2006, Prudential filed a form S-3 Registration Statement and Prospectus with the SEC (the "Form S-3") using a "shelf registration" or continuous offering process. Under this process, Prudential was allowed to sell securities described in future prospectus supplements in future offerings. The Form S-3, the prospectus supplement and any documents incorporated by referenced therein would constitute the registration statement for a given offering.

41. On or about June 24, 2008 (only four business days before the end of Prudential's second fiscal quarter on June 30, 2008), Prudential filed its prospectus supplement for the Offering (the "Prospectus Supplement") in connection with the Form S-3 and the "shelf registration" process discussed above, pursuant to which Prudential sold 36.8 million Notes of the Securities to the public at $25 per Note. The Prospectus Supplement expressly incorporated by reference Prudential's quarterly report for the quarter ended March 31, 2008 filed on form 10-Q with the SEC (the "Form 10-Q") and Prudential's annual report for the year ended December 31, 2007 filed on form 10-K with the SEC (the "Form 10-K"). The Form S-3, Prospectus Supplement, Form 10-K and Form 10-Q (along with other documents incorporated by reference into the Prospectus Supplement) jointly formed the registration statement for the Offering (the "Registration Statement").

### Material Misrepresentations Arising From The Collapse Of The Auction Rate Securities Market

42. The Registration Statement contained material misrepresentations of present fact which concealed the liability and involvement of the Company arising out of the February 2008 collapse of the market for action rate securities ("Auction Rate Securities" or "ARS"). First, the

Registration Statement contained statements which constituted affirmative misrepresentations that, as of the Offering, there were no material lawsuits or regulatory matters involving Prudential arising out of the collapse of the ARS market. Second, the Company's financial results contained in the Registration Statement were materially overstated by failing to account for Prudential's contingent liabilities in connection with the collapse of the ARS market, in violation of generally accepted accounting principles ("GAAP"). Third, the financial statements in the Registration Statement violated GAAP by failing to disclose the existence of pending litigation and regulatory matters against the Company related to the collapse of the ARS market. Finally, the Registration Statement was materially misleading due to the failure to disclose the existence of, and potential liability from, pending litigation and regulatory matters in violation of Item 303(a)(3)(ii) of SEC Regulation S-K, 17 C.F.R. Section 229.303(a)(3)(ii) ("Item 303").

43. Beginning in July 2003 and at all relevant times hereto, Prudential and the Wachovia Corporation were partners in a joint venture known as Wachovia Securities Financial Holdings LLC that, among other activities, underwrote, sold, and participated in auctions with regard to Auction Rate Securities (the "Joint Venture"). Auction Rate Securities are municipal bonds, corporate bonds, and preferred stocks with interest rate or dividend yields that are periodically re-set through periodic auctions.

44. On February 13, 2008, the formerly liquid market for ARS became almost entirely illiquid when various broker-dealers, including the Joint Venture, suddenly ended their participation as market-makers in the ARS market.

45. Prior to the Offering, the February 2008 collapse of the ARS market immediately resulted in various complaints, lawsuits, and investigations against the Joint Venture. For example, a securities class action was filed against the Joint Venture on or about March 19, 2008

(the "Joint Venture Class Action") alleging, *inter alia*, that the Joint Venture was liable for misrepresenting that Auction Rate Securities were effective cash alternatives when the Joint Venture knew, but failed to disclose, that ARS were complex, long-term financial instruments with 30 year or longer maturity dates, and further that ARS would only be liquid so long as the Joint Venture (and other broker dealers) artificially supported the market. In addition, prior to the Offering, the SEC and other regulatory agencies commenced an investigation into the Joint Venture's misconduct in connection with the collapse of the ARS market, and formally requested internal documents and other information in furtherance of that investigation (the "Joint Venture Regulatory Investigations") (together with the Joint Venture Class Action, the "Joint Venture Litigations").

46. On July 31, 2008 – approximately one month after the Offering – Prudential disclosed the existence of the Joint Venture Litigations for the first time in its quarterly report for the quarter ended June 30, 2008 filed with the SEC on Form 10-Q:

> In recent months . . . Wachovia Securities has become the subject of customer complaints, legal actions, including a putative class action, and investigations by securities regulators and agencies relating to Wachovia Securities' role in the underwriting, sale and auction of auction rate securities.

On October 29, 2008, Prudential disclosed that it was taking a pre-tax charge of ***$235 million*** to resolve the claims asserted in connection with the Joint Venture Regulatory Investigations.

47. Despite the collapse of the ARS market and the existence of the Joint Venture Litigations prior to the Offering, the Registration Statement contained no disclosure whatsoever containing the Joint Venture Litigations or the Joint Venture's contingent liability arising out of the collapse of the ARS market and/or the Joint Venture Litigations.

48. As alleged above, the Form 10-K and Form 10-Q were expressly incorporated into the Registration Statement. Both the Form 10-K and Form 10-Q contained sections entitled "Litigation and Regulatory Matters" and "Legal Proceedings," which purported to list all of the material lawsuits and regulatory matters concerning Prudential; those statements constituted affirmative representations of present fact that, as of the Offering, there were no material lawsuits or regulatory matters concerning Prudential other than the matters listed. These representations of present fact were materially false or misleading due to the failure to disclose the existence of the Joint Venture Litigations and/or the Company's potential liability as a result of the Joint Venture Actions.

49. In addition, the financial statements in the Registration Statement were materially false or misleading due to the failure to recognize or disclose Prudential's contingent liability arising out of the collapse of the ARS market and/or the Joint Venture Litigations, in violation of GAAP.

50. For example, GAAP expressly requires that financial statements accrue a charge for the contingent loss where the "[i]nformation available prior to the issuance of the financial statements indicates that it is probable to an asset had been impaired or a liability had been incurred at the date of the financial statements" and the "amount of loss can be reasonably estimated." Financial Accounting Standards Board Statement No. 5 ("FASB 5"), ¶8. In violation of this GAAP requirement, the financial statements in the Registration Statement were materially false or misleading and misrepresented the Company's financial results by failing to accrue for the Company's contingent liability from the collapse of the ARS market and/or the Joint Venture Litigations.

51. GAAP also specifically requires financial statements to disclose "loss contingencies" resulting from "pending or threatened litigation." FASB 5, ¶4(b). Even where the entity filing a financial statement with the SEC believes that an "unfavorable outcome" is "not probable," or "the amount of loss cannot be reasonably estimated," the entity is still "required" to make "disclosure" of "pending or threatened litigations" as contingent liabilities (FASB 5, ¶¶4(b) and 37), which must set forth "the nature of the contingency and shall give an estimate of the possible loss or range of loss or state that such an estimate cannot be made." FASB 5, ¶10. In violation of these GAAP requirements, the Registration Statement misrepresented the Company's financial results by failing to disclose the Joint Venture Litigations and to either estimate the Company's contingent liability from the Joint Venture Actions or explain why such an estimate could not be made.

52. Defendants were also obligated to disclose the financial impact on Prudential of the collapse of the ARS market and/or the Joint Venture Litigations in the Registration Statement, pursuant to Item 303. Section 11 of the Securities Act is violated if the Registration Statement "omitted to state a material fact required to be stated therein." Item 303 is an SEC regulation that requires disclosure in the Registration Statement of "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."

53. Defendants' misrepresentations and omissions discussed above and the adverse information concealed by Defendants' failure to comply with Item 303 were especially material because the Registration Statement became effective on June 24, 2008, only four business days before the end of Prudential's second fiscal quarter on June 30, 2008.

**Material Misrepresentations Concerning the Costs Of**
**Prudential's Annuity Obligations And Its Deferred Policy Acquisition Costs**

54. The Registration Statement also contained material misrepresentations of present fact concerning the actual costs of funding the Company's obligations to annuity account holders and by understating amortization of deferred policy acquisition costs.

55. Specifically, the Registration Statement reported that the Company earned approximately $54 million in pre-tax income (from continuing operations before equity in earnings of joint ventures) for the quarter ended March 31, 2008.

56. The Registration Statement stated that the $54 million amount had been calculated after establishing a reserve to provide for Prudential's annuity obligations (*i.e.*, the amount of Prudential's obligations under the annuity contracts it sold to customers) and its deferred policy acquisition costs (*i.e.*, the amount of Prudential's upfront commissions to sales agents, underwriting costs, and other costs incurred in connection with the sale of annuities) (the "Reserves"). The Registration Statement also stated that Prudential calculated its Reserves by using statistically generated "future rate of return assumptions" about the Company's investments in the Reserves.

57. The Registration Statement represented that the amount of Reserves would have to be $30 million higher if the ***actual*** performance of the Company's investments had been used to calculate the needed Reserves (instead of the "future rate of return assumptions").

58. The representations alleged in ¶¶55 and 57 above were materially false or misleading because, in order to provide for Prudential's annuity obligations and deferred policy acquisition costs as of the Offering, Prudential needed to add as much as ***$380 million*** in additional Reserves based on the actual performance of the Company's investments, not $30 million. During

a conference call with analysts on October 30, 2008, Defendant Carbone admitted that the decline in the actual performance of the Company's investments necessitating additional Reserves had occurred "over the past year."

59. Had this $380 million amount been added to the Reserve and accounted for at the time of the Offering, the charge would have ***completely eliminated*** the Company's reported $54 million in pre-tax income (from continuing operations before equity in earnings of joint ventures) as reported in the Registration Statement and in fact would have resulted in a ***loss*** of $326 million.

60. In addition, Defendants violated Item 303 by failing to disclose the "known trend or uncertainty" that, as a result of the actual performance of the Company's investments as of the Offering, the amount of additional Reserves necessary to provide for Prudential's annuity obligations and deferred policy acquisition costs based on the actual performance of the Company's investments required as much as a $380 million addition to the Reserves, which would result in a materially unfavorable impact on income from continuing operations.

61. Defendants' misrepresentations and omissions discussed above and the adverse information concealed by Defendants' failure to comply with Item 303 were especially material because the Registration Statement became effective on June 24, 2008, only four business days before the end of Prudential's second fiscal quarter on June 30, 2008.

**Misrepresentations Concerning The Amount Of Prudential's Asset-Backed Fixed Maturity Securities That Were Impaired As Of March 31, 2008**

62. The Registration Statement also contained material misrepresentations concerning the amount of "other than temporary impairments" of the Company's assets.

63. The Registration Statement represented that Prudential recognized "other-than-temporary impairments" on its asset-backed fixed maturity securities when the value of those securities had decreased in amount (i) by 20% or more for six months or (ii) by 50%. The

Registration Statement further represented that Prudential had recognized $539 million in "other-than-temporary impairment" losses on fixed maturity securities for the quarter ended March 31, 2008.

64. The representations in the Registration Statement alleged in ¶63 above were materially false or misleading. Contrary to the representations in the Registration Statement, as Prudential subsequently disclosed during the Company's July 31, 2008 earnings conference call with analysts (the "July 31 Conference Call"), the amount of Prudential's properly recognized "other than temporary" impairments was actually $744 million as of March 31, 2008, due to an ***additional $205 million*** of asset-backed fixed maturity securities that were ***already*** impaired ***by more than 50%*** in the quarter ended March 31, 2008.

65. Specifically, during the July 31 Conference Call, Defendant Carbone reported that the Company was recognizing "$452 million of fixed maturity impairments" in the quarter ended June 30, 2008, and that $247 million of that amount consisted of asset-backed fixed maturity securities that had been impaired by at least 20% for at least six months as of June 30, 2008. As to the other $205 million in fixed maturity impairments, Defendant Carbone disclosed that the $205 million represented impairments to asset-backed fixed maturity securities that "came primarily from declines in value of 50% or more that were in the zero to three month category at March 31[, 2008]."

66. In the alternative, Defendants violated Item 303 by failing to disclose the "known trend" that, as of the Offering, the amount of Prudential's asset-backed fixed maturity securities that were impaired by 50% or more had increased by approximately $205 million, and that this trend would have a materially unfavorable impact on income from continuing operations.

67. Defendants' misrepresentations and omissions discussed above and the adverse information concealed by Defendants' failure to comply with Item 303 were especially material because the Registration Statement became effective on June 24, 2008, only four business days before the end of Prudential's second fiscal quarter on June 30, 2008.

**Material Misrepresentation of Prudential's Net Income**

68. In the Registration Statement, Prudential reported, *inter alia*, net income of $69 million for the quarter ended March 31, 2008. As more particularly alleged above, these financial results were materially false or misleading because they overstated Prudential's pre-tax income by $820 million. Had the financial statements not contained these material overstatements, the Registration Statement would have reported a net ***loss*** of as much as ***$454 million*** for the quarter ended March 31, 2008.

**CLAIMS FOR RELIEF**

**First Claim For Relief**

**Violations of Section 11 of the Securities Act against All Defendants**

69. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein. Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

70. This Claim for Relief is asserted by Plaintiff against all Defendants under and pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of all members of the Class.

71. As set forth above, the Registration Statement (i) contained untrue statements of material fact, (ii) omitted to state information required to be stated therein and (iii) omitted

information necessary to make the statements contained in the Registration Statement not misleading.

72. Prudential is the registrant of the Offering. As issuer of the Securities, Prudential is strictly liable to plaintiff and the Class for the misstatements and omissions identified above pursuant to Section 11 of the Securities Act.

73. Each of the Individual Defendants named in this Claim for Relief signed the Registration Statement, was responsible for the contents and dissemination of the Registrations Statement, and is liable to plaintiff and the Class for the misstatements and omissions identified above pursuant to Section 11 of the Securities Act.

74. Each of the Underwriter Defendants was identified in the Registration Statement, was responsible for the contents and dissemination of the Registration Statement, and is liable to Plaintiff and the Class for the misstatements and omissions identified above pursuant to Section 11 of the Securities Act.

75. None of the Individual or Underwriter Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

76. By reason of the conduct herein alleged, each defendants violated, and/or controlled a person who violated, Section 11 of the Securities Act.

77. Plaintiff and all members of the Class purchased Securities which were issued pursuant to and directly traceable to the Registration Statement.

78. Defendants' misrepresentations have caused Plaintiff and the Class to suffer damages. For example, on March 4, 2009 (the date on which the first lawsuit was filed against

Defendants), the Securities were trading at only $13.04 per Note, approximately ***48%*** below the $25.00 per Note offering price

79. This action was brought within three years of the violations of Section 11 of the Securities Act and within one year of the date that any such violations could or should have been discovered through reasonable diligence.

**<u>Second Claim For Relief</u>**

**Violations of Section 15 of the Securities Act against the Individual Defendants**

80. Plaintiff incorporates by reference all preceding paragraphs as if set forth fully herein. Plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act

81. This Claim for Relief is asserted by Plaintiff against the Individual Defendants under and pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, on behalf of all members of the Class.

82. In addition to the liability of the Individual Defendants as signatories of the Registration Statement under Section 11 of the Securities Act as set forth above, these Individual Defendants had the power to control, and did control, Prudential by reason of their positions as senior management and directors, and these Individual Defendants are therefore under Section 15 of the Securities Act, 15 U.S.C. § 77o, liable jointly and severally with Prudential for Prudential's violation of Section 11 of the Securities Act.

**WHEREFORE**, Plaintiff herein demands judgment:

(a) Declaring this action to be a proper class action under Fed. R. Civ. P. 23;

(b) Awarding Plaintiff and the Class money damages (including pre-judgment interest) against each Defendant, jointly and severally;

(c) Awarding equitable relief, including but not limited to attaching, impounding, imposing a constructive trust upon or otherwise restricting Defendants' assets so as to assure that Plaintiff and the Class have an effective remedy;

(d) Awarding Plaintiff and the Class their costs and expenses, including, without limitation, reasonable attorneys', accountants' and experts' fees; and

(e) Granting such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: July 21, 2009

**LITE DEPALMA GREENBERG & RIVAS, LLC**

By: /s/ Joseph J. DePalma
Joseph J. DePalma
Katrina Carroll
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@ldgrlaw.com

*Liaison Counsel for Plaintiff*

Jeffrey S. Nobel
Nancy A. Kulesa
**IZARD NOBEL LLP**
29 South Main Street, Suite 215
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
jnobel@izardnobel.com

*Lead Counsel for Plaintiff*