# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KAREN M. BAUER, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. 09-1120-JLL |
| Plaintiff, ) | |
| vs. ) | |
| PRUDENTIAL FINANCIAL, INC., et al. ) | |
| Defendants. ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL

---

**LITE DEPALMA GREENBERG, LLC**
Allyn Z. Lite (alite@litedepalma.com)
Joseph J. DePalma (jdepalma@litedepalma.com)
Katrina Carroll (kcarroll@litedepalma.com)
Mayra V. Tarantino (mtarantino@litedepalma.com)
Two Gateway Center, 12th Floor
Newark, NJ 07102-5003
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

*Liaison Counsel for Lead Plaintiff*

**IZARD NOBEL LLP**
Robert A. Izard
Jeffrey S. Nobel (jnobel@izardnobel.com)
Mark P. Kindall
Seth R. Klein
Nancy A. Kulesa
29 South Main Street, Suite 215
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

*Lead Counsel for Plaintiff*

287894 v1

## TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................1

II.     RELEVANT FACTUAL BACKGROUND.......................................2

        A.      The Appointment of Lead Plaintiff .............................................2

        B.      The Original Complaint.............................................................3

        C.      Defendants' Motion to Dismiss the Original Complaint....................3

        D.      Defendants' Motion to Dismiss the Amended Complaint..............4

        E.      The Settlement Negotiations......................................................4

        F.      The Additional Discovery Conducted by Class Counsel....................6

        G.      The Settlement Stipulation........................................................6

        H.      The Motion for Preliminary Approval...........................................7

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL...............7

        A.      The Standard for Granting Preliminary Approval.......................7

        B.      The Settlement Meets The Standard For Preliminary Approval...........10

                1.      The Settlement Was Negotiated At "Arms'-Length"..................10

                2.      The Proposed Settlement Reflects a Reasonable Assessment of the
                        Strength of the Class' Claim..................................................11

                        a.      The Risk of Proving Falsity.......................................12

                                i.      ARS Claim..............................................12

                                ii.     OTTI Claim.............................................13

                                iii.    Annuity / DAC Claim................................14

                        b.      The Risk of Proving Defendants' "Knowledge"..............16

                        c.      The Risk of Proving Damages....................................17

                3.      The Settlement Has No Other Deficiencies...............................20

IV.     THE METHOD OF NOTICE IS PROPER.........................................22

V.      The Court Should Certify The Settlement Class Under Rule 23...................23

        A.      The Requirements of Rule 23(a) Have Been Met............................23

                1.      Rule 23(a)(1) Has Been Satisfied ....................................23

                2.      Rule 23(a)(2) Has Been Satisfied....................................24

                3.      Rule 23(a)(3) Has Been Satisfied....................................26

4.     Rule 23(a)(4) Has Been Satisfied……………………………..……27

B.    The Requirements Of Rule 23(b)(3) Have Been Satisfied…………….28

1.     Common Questions of Law or Fact Predominate……………..…28

2.     A Class Action is Superior to Individual Actions…………….…29

a.     Rule 23(b)(3)(A) …………………………………………..….…30

b.     Rule 23(b)(3)(B) …………………………………………...……30

c.     Rule 23(b)(3)(C)……………………………………………....…30

d.     Rule 23(b)(3)(D) …………………………………………….…30

VI.    PROPOSED SCHEDULE OF EVENTS…………………………………31

VII.   CONCLUSION………………………………………………………………33

## TABLE OF AUTHORITIES

Cases

Am. Secs. Litig.,
    202 F.R.D. 177 (E.D. Pa. 2001) ...................................................................................... 27

Amchem Prods. v.Windsor,
    521 U.S. 591 (1997) ............................................................................................... 29, 31

Baby Neal for and by Kanter v. Casey,
43 F.3d 48 (3d Cir. 1994) ................................................................................................ 25, 26

Barnes v. Am. Tobacco Co.,
    161 F.3d 127 (3d Cir.1998)............................................................................................ 26

Bogosian v. Gulf Oil Corp.,
    561 F.2d 434 (3d Cir.1977).......................................................................................... 29

Curiale v. Lenox Group, Inc.,
    Civil Action No. 07-1432, 2008 WL 4899474 (E.D. Pa. Nov. 14, 2008) ................ 8, 20

Dewey v. Volkswagon of America,
    728 F. Supp. 2d 546 (D.N.J. 2010) .......................................................... 11, 14, 15, 23

Dura Pharm., Inc. v. Broudo,
    544 U.S. 336 (2005)................................................................................................ 19, 20

Georgine v. Amchem Prods., Inc.,
    83 F.3d 610 (3d Cir.1996),............................................................................................ 28

Grasty v. Amalgamated Clothing & Textile Workers Union,
    828 F.2d 123 (3d Cir.1987)............................................................................................ 27

In re Arbinet-theexchange, Inc. Sec. Litig.,
    No. 05-4404, 2006 WL 3831396 (D.N.J. Dec. 28, 2006).............................................. 16

In re Computron Software, Inc.,
    6 F. Supp. 2d 313 (D.N.J. 1998) .................................................................................. 21

In re Constar Int'l, Inc. Sec. Litig.,
    585 F.3d 774 (3d Cir. 2009)..................................................................................... 17, 29

In re Corel Corp. Inc. Sec. Litig.,
    293 F. Supp. 2d 484 (E.D. Pa. 2003) .......................................................................... 21

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
  55 F.3d 768 (3d Cir. 1995)..................................................................................... 7, 25

In re Honeywell Intern. Inc.,
  211 F.R.D. 255 (D.N.J. 2002)...................................................................................... 25

In re NASDAQ Mkt. Makers Antitrust Litig.,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..................................................................................... 9

In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions (Prudential,
  II ). 148 F.3d 283 (3d Cir.1998)............................................................................ 26, 27

In re Rite Aid Corp. Sec. Litig.,
  396 F.3d 294 (3d Cir. 2005)......................................................................................... 21

In re Schering Plough Corp. ERISA Litig.,
  589 F.3d 585 (3d Cir.2009).......................................................................................... 26

In re Schering-Plough Corp. Sec. Litig.,Master,
  File No. 01-CV-0829 (KSH/MF), 2009 WL 5218066 ................................................ 10

In re Warfarin Sodium Antitrust Litig.,
  391 F.3d 516 (3d Cir. 2003).......................................................................................... 24

Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,
  149 F.R.D. 65 (D.N.J.1993) .......................................................................................... 24

Milliron v. T-Mobile USA, Inc.,
  Civil Action No. 08-4149 (JLL), 2009 WL 3345762 (D.N.J. Sept. 14, 2009) .............. 10

Officers for Justice v. Civil Service Comm'n,
  688 F.2d 615 (9th Cir. 1982) .......................................................................................... 7

Osgood v. Harrah's Entm't, Inc.,
  202 F.R.D. 115 (D.N.J.2001)......................................................................................... 24

Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation,
  323 F. Supp. 364 (E.D. Pa. 1970) ................................................................................... 9

Phillips Petroleum Co. v. Shutts,
  472 U.S. 797 (1985).......................................................................................................30

Reed v. United Transp. Union,
  488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989).................................................. 27

Smith v. Professional Billing & Management Services, Inc.,
   Civil No. 06-4453 (JEI), 2007 WL 4191749 (D. N.J. Nov. 21, 2007) .................. 8, 9, 21

Stewart v. Abraham,
   275 F.3d 220 (3d Cir.2001),........................................................................................ 24

Szczubelek v. Cendant Mortgage Corp.,
   215 F.R.D. 107 (D.N.J.2003)..................................................................................... 24

Van Bronkhorst v. Safeco Corp.,
   529 F.2d 943 (9th Cir. 1976) ...................................................................................... 7

Varacallo v. Mass. Mut. Life Ins. Co.,
   226 F.R.D. 207 (D.N.J. 2005)..................................................................... 11, 25, 27, 29

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,
   396 F.3d 96 (2d Cir. 2005).......................................................................................... 8

Wetzel v. Liberty Mut. Ins. Co.,
   508 F.2d 239 (3d Cir. 1975)....................................................................................... 27

Statutes
15 U.S.C. §77k(e) ....................................................................................................... 17

Rules
Rule 23 of the Federal Rules of Civil Procedure ....................................................... *passim*

## I.   INTRODUCTION

Lead Plaintiff Paul J. Perry, Trustee of the Paul J. Perry Revocable Trust("Lead Plaintiff"), individually, and on behalf of himself and the Settlement Class Members defined below (the "Settlement Class"), and Defendants Prudential Financial, Inc. ("Prudential"), Arthur F. Ryan, Richard J. Carbone, Peter B. Sayre, Dennis G Sullivan, Frederic K. Becker, Gordon M. Bethune, Gaston Caperton, Gilbert F. Casellas, James G. Cullen, William H. Gray III, Jon F. Hanson, Constance J. Horner, Karl J. Krapek, James A. Unruh (collectively, the "Prudential Defendants"), Citigroup Global Markets Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Morgan Stanley & Co. Incorporated (n/k/a Morgan Stanley & Co., LLC), UBS Securities LLC, Wachovia Capital Markets, LLC, Banc of America Securities LLC, RBC Capital Markets Corporation, and J.P. Morgan Securities Inc. (collectively, the "Underwriter Defendants) (together, "Defendants"), have entered into a proposed settlement of the above-entitled class action litigation in the amount of $16,500,000 in cash (the "Settlement" or the "Settlement Fund"). The terms of the Settlement are set forth in a Stipulation of Settlement, dated as of August 4, 2011 (the "Stipulation").

Lead Plaintiff submits this Memorandum of Law in support of his Motion for Preliminary Approval (the "Motion for Preliminary Approval"), filed simultaneously herewith, for an Order (the "[Proposed] Preliminary Approval Order") (i) preliminarily approving the Settlement as fair, reasonable and adequate, (ii) preliminarily certifying the Settlement Class, (iii) preliminarily appointing Lead Plaintiff as the Settlement Class representative, (iv) preliminarily appointing Izard Nobel LLP as Lead Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel, for the Settlement Class, (v) directing, and

287894 v1                                                    1

preliminarily approving, the mailing of the Notice with the Proof of Claim and Release and the issuance of the Summary Notice; and (vi) scheduling the hearing date for final approval (the "Final Approval Hearing") of the Settlement, the motion for an award of attorneys' fees to Lead Counsel, Izard Nobel LLP, and Liaison Counsel, Lite DePalma Greenberg, LLC ("Class Counsel") and reimbursement of costs and expenses (the "Fee and Expense Motion"), and the motion for an award to Lead Plaintiff in connection with his representation of the Settlement Class ("Lead Plaintiff's Expense Motion"). If the Motion for Preliminary Approval is granted, Settlement Class Members will be notified of the Settlement, and provided with an opportunity to opt out of the Settlement and/or object to any aspect of the Settlement at the Final Approval Hearing.[1]

The Motion for Preliminary Approval should be granted. As discussed below, the Settlement represents a very good result for the Settlement Class, is well within the range of possible approval under Rule 23, and is the product of arm's-length, informed, and non-collusive negotiations conducted by experienced counsel.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    The Appointment of Lead Plaintiff

The Litigation was commenced in March 2009 as a class action under Rule 23 of the Federal Rules of Civil Procedure in the United States District Court, District of New Jersey. By Order dated May 22, 2009, the Court appointed Paul J. Perry, Trustee of the Paul J. Perry Revocable Trust, as Lead Plaintiff, and approved Lead Plaintiff's selection

---

[1] The [Proposed] Preliminary Approval Order is attached as Exhibit 2 to the Motion for Preliminary Approval; the Stipulation is attached as Exhibit 1 to the Motion for Preliminary Approval. Upon entry of the Preliminary Approval Order, the Settlement Fund will be deposited into an interest-bearing escrow account within thirty (30) days.

of Izard Nobel LLP as Lead Counsel and Lite DePalma Greenberg LLC (formerly Lite

DePalma Greenberg & Rivas, LLC) as Liaison Counsel.

**B.      The Original Complaint**

On July 21, 2009, Lead Plaintiff filed his Consolidated Class Action Complaint

(the "Original Complaint").  The Original Complaint asserted claims against

Defendantson behalf of a class of all persons who purchased the 9% Junior Subordinated

Notes of Prudential Financial, Inc. (the "Notes") pursuant to and/or traceable to a

registration statement (the "Registration Statement") and prospectus (the "Prospectus")

issued in connection with Prudential's June 24, 2008 initial public offering of 36.8

million Notes at a price of $25 per Note (the "Offering") (the "Settlement Class").

The Original Complaint alleged that Defendants sold the Notes in the Offering in

violation of §§11 and 15 of the Securities Act of 1933 by means of a false and misleading

Registration Statement and Prospectus which, *inter alia,* contained material

misrepresentations and omissions concerning (i) the Company's involvement in and/or

the existence of a contingent liability arising from the February 2008 collapse of the

market for auction rate securities (the "ARS Claims"), (ii) the amount of Prudential's

liability in connection with its annuity obligations and deferred acquisition costs (the

"Annuity Claims"), and (iii) the amount of Prudential's "other than temporary

impairments" (the "OTTI Claims").

**C.      Defendants' Motion to Dismiss the Original Complaint**

The parties then engaged in motion practice concerning the sufficiency of the

claims and allegations in the Original Complaint.  Defendants filed Motions to Dismiss

the Original Complaint on September 21, 2009; Lead Plaintiff served its Opposition to

Defendants' Motions to Dismiss on December 8, 2009; Defendants served Reply briefs

on January 26, 2010; and Lead Plaintiff filed a Sur-Reply brief February 5, 2010.

On June 29, 2010, the Court issued an Opinion which, *inter alia*, denied

Defendants' Motions to Dismiss with respect to the Annuity Claims and the OTTI

Claims. [Dkt. No. 87.]However, the Court granted Defendants' Motions to Dismiss the

ARS Claims, without prejudice and with leave to replead, on the ground that the Original

Complaint failed to allege a sufficient factual basis to infer that Defendants knew that

losses from the Company's involvement in the collapse of the ARS market was

"probable, or even possible, and that Prudential had information from which it could

reasonably estimate any contingency."*Id.* at 19.

### D.     Defendants' Motion to Dismiss the Amended Complaint

On July 19, 2010, Lead Plaintiff filed its Amended ConsolidatedClass Action

Complaint(the "Amended Complaint"), which, *inter alia,* added additional allegations

concerning the ARS Claims, but did not amend the Annuity Claims or the OTTI Claims.

The parties then engaged in motion practice concerning the sufficiency of the allegations

underlying the ARS claims in the Amended Complaint.  Defendants served Motions to

Dismiss the Amended Complaint on September 2, 2010; Lead Plaintiff served its

Opposition to Defendants' Motions to Dismiss on October 18, 2010; and, on November

17, 2010, Defendants served Reply briefs, and filed all briefs and papers previously

served in connection with the Motions to Dismiss.

### E.     The Settlement Negotiations

In March 2011, while Defendants' motions to dismiss the ARS claims in the

Amended Complaint were pending, counsel for the parties conferred to explore the

possibility of settlement, and subsequently agreed to a multi-step process that would include document review, factual and legal presentations, and mediation.  First, counsel for Defendants provided Class Counsel with certain internal Prudential documents concerning the Annuity and OTTI claims (i.e., the claims that had been sustained by the Court), as well as information prepared by Defendants' damages expert purporting to show the lack of any Settlement Class damages attributable to the Annuity Claims, the OTTI claims, and the ARS claims.[2] Next, on April 7, 2011, Class Counsel and counsel for the Prudential Defendants participated in a settlement conference in Boston, Massachusetts at the offices of Goodwin Proctor LLP.  During that settlement conference, counsel for the Prudential Defendants made a factual and legal presentation concerning, *inter alia,* the merits of the claims and allegations asserted in the Amended Complaint, and presented the Prudential Defendants' analysis of the lack of damages to the Settlement Class.  Then, on May 3, 2011, Class Counsel and counsel for the Prudential Defendants participated in an approximately 12 hour mediation session with Professor Eric D. Green in Boston, Massachusetts, during which, *inter alia,* additional factual and legal presentations were made by counsel concerning the merits of the factual and legal claims asserted in the Litigation and the size of potential damages to the Settlement Class.  At the conclusion of the mediation session with Professor Green,

---

[2] Defendants' counsel took the position that internal Prudential documents concerning the ARS claims would not be produced to Class Counsel prior to the mediation because the Court had dismissed those claims in the June 29, 2010 Opinion.  However, counsel for the Defendants agreed that, in the event that a settlement was reached through mediation, Class Counsel would be permitted to conduct discovery concerning the merits of the ARS claims, as well as the OTTI Claims and the Annuity Claims.

counsel for the Parties agreed in principle upon the terms of the Settlement and executed a Memorandum of Understanding ("MOU").

### F.     The Additional Discovery Conducted by Class Counsel

As discussed above, one of the conditions of the mediation was that Class Counsel be permitted to conduct discovery. Accordingly, Defendants agreed during the May 3, 2011 mediation, and in the MOU, to participate in additional discovery to allow Class Counsel to confirm the accuracy of various factual assertions made by Defendants in connection with the mediation process. Defendants' counsel subsequently produced numerous categories of documents requested by Class Counsel concerning all of the claims in the Amended Complaint. After Class Counsel reviewed the documents produced by Defendants, Class Counsel then interviewed certain Prudential employees concerning the contents of the information contained in the documents produced, as well as certain factual allegations in the Amended Complaint. As a result of this document review and interview process, Class Counsel confirmed that the factual representations made during the mediation process were accurate.

### G.     The Settlement Stipulation

Counsel for the parties also conducted extensive negotiations concerning the contents of a formal, comprehensive settlement stipulation. On August 4, 2011, following the completion of the settlement discovery, counsel for the parties executed a Stipulation of Settlement, including exhibits (the "Settlement Stipulation"), which, *inter alia,* formally documents the terms of the settlement reached between the parties. The Settlement Stipulation is attached as Exhibit 1 to the Motion for Preliminary Approval.

**H.**     **The Motion for Preliminary Approval**

By the Motion for Preliminary Approval, Class Counsel requests that the Court

sign the [Proposed] Preliminary Approval Order.  As discussed above, the [Proposed]

Preliminary Approval Order, *inter alia,* preliminarily approves the Settlement;

preliminarily certifies the Settlement Class; preliminarily authorizes and approves the

form and manner of providing notice to Settlement Class Members; sets deadlines for

Settlement Class Members to object or opt-out of the Settlement; and schedules the Final

Date for final approval of the Settlement,the Fee and Expense Motion, and Lead

Plaintiff's Expense Motion.

**III.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL**

    **A.     The Standard for Granting Preliminary Approval**

Courts strongly favor settlement as a method for resolving disputes.  *See, e.g., In*

*re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F.3d 768, 784 (3d

Cir. 1995) ("The law favors settlement, particularly in class actions and other complex

cases where substantial judicial resources can be conserved by avoiding formal

litigation");*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir.

1982) ("voluntary conciliation and settlement are the preferred means of dispute

resolution"). Class action suits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome and the typical length of the

litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of

the compromise of claims brought on a class basis, which can occur only after notice of

the proposed settlement is given to the absent class members.  Final approval of a

proposed class action settlement involves a two-step process: preliminary fairness

approval, and a subsequent fairness determination after notice to the class and a hearing.

*See, e.g.,Smith v. Professional Billing & Management Services, Inc.,*Civil No. 06-4453

(JEI), 2007 WL 4191749, at *1 (D. N.J. Nov. 21, 2007); *Curiale v. Lenox Group,*

*Inc.,*Civil Action No. 07-1432, 2008 WL 4899474, at *4 (E.D. Pa. Nov. 14, 2008) (citing

*Manual for Complex Litigation (Fourth)*§21.632 (2006)).In the first step of the process, a

court makes a preliminary evaluation of the settlement so that notice of a final approval

hearing may be sent to Settlement Class. Unlike the final approval hearing – when the

Court will have before it more extensive pleadings and a factual record submitted in

support of the proposed settlement, and will then be asked to make a determination as to

whether the settlement is fair, reasonable and adequateafter notice of the settlement has

been given and class members have an opportunity to express their views – the inquiry

upon a motion for preliminary approval is limited. Preliminary approval is not binding, is

granted unless a proposed settlement is obviously deficient.*See, e.g., Wal-Mart Stores,*

*Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *Smith, supra,* 2007 WL

4191749, at *1.

Preliminary approval is granted where (i) the parties' negotiations occurred at

"arms length," (ii) there was access to sufficient information to allow Plaintiff's counsel

to evaluate the strengths and weaknesses of the claims and (iii) Plaintiff's counsel are

experienced in similar litigations.*SeeCuriale,* 2008 WL 4899474, at *4 ("In evaluating a

settlement for preliminary approval, the court need not reach any ultimate conclusions on

the issues of fact and law that underlie the merits of the dispute." Instead, the court must

determine whether 'the proposed settlement discloses grounds to doubt its fairness or

other deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and whether it falls within the range of possible approval.' This analysis often focuses on whether the settlement is the product of "arms-length negotiations") (citations omitted); *Smith, supra,* 2007 WL 4191749, at *1; *In re NASDAQ Mkt. Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) (preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason) ("Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations . . . and falls within the range of possible approval, preliminary approval should be granted");*Philadelphia Housing Authority v. American Radiator & Standard Sanitary Corporation,* 323 F. Supp. 364, 372 (E.D. Pa. 1970) (preliminary approval is merely a prerequisite to incurring the expense for notice so that "the proposed settlement . . . may be submitted to the members of the prospective class for their acceptance or rejection").

Thus, granting preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate, for that determination occurs only after notice of the settlement has been given to the members of the Settlement Class. If the district court preliminarily approves the settlement, the class is notified and provided with an opportunity to be heard, at a final approval fairness hearing, concerning the merits of the settlement. 4 Herbert B. Newberg, *Newberg on Class Actions* § 11:25, at 38 (4th ed. 2002).

By the Motion for Preliminary Approval, Lead Plaintiff is requesting the Court to take the first step in this process by granting preliminary approval. For the reasons set

forth below, Lead Plaintiff respectfully submits that preliminary approval should be granted.

### C.   <u>The Settlement Meets The Standard For Preliminary Approval</u>

The standards for preliminary approval have been satisfied in this case.

#### 4.   The Settlement Was Negotiated At "Arms'-Length"

The Settlement should be preliminarily approved because it is the result of vigorous, "arms-length" negotiations conducted by counsel experienced in securities class action litigation. After internal documents were provided to Class Counsel, the parties conducted a settlement conference in April 2011 in which Defendants made a presentation to Class Counsel concerning their view of the merits of the claims and the purported lack of damages to the Settlement Class, and the parties vigorously debated these issues.  After the parties prepared and exchanged comprehensive mediation briefs, the parties subsequently reached a settlement in principle after ahighly contentious an adversarial mediation on May 3, 2011 conducted by Eric Green, a highly respected mediator, who has extensive experience in mediating complex class actions.  As this Court has noted, "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Milliron v. T-Mobile USA, Inc.,* Civil Action No. 08-4149 (JLL), 2009 WL 3345762, at \*5 (D.N.J. Sept. 14, 2009) (Linares, J.) (citation and quotation marks omitted); *see, e.g., In re Schering-Plough Corp. Sec. Litig.,*Master File No. 01-CV-0829 (KSH/MF), 2009 WL 5218066, at\*3 (D.N.J. Dec. 31, 2009) (Hayden, J.) (use of "highly-regarded mediator" part of "a pattern that demonstrates arms-length negotiating")*Bernhard v. T.D. Bank, N.A.,*Civil No. 08-4392 (RBK/AMD), 2009 WL

3233541, at *2 (D.N.J. Oct. 5, 2009) (Kugler, J.) (use of respected mediator "supports the inference of arm's length negotiation").

Moreover, as this Court has also recognized, "Class Counsel's approval of the Settlement also weighs in favor of the Settlement's fairness." *Varacallo v. Mass. Mut. Life Ins. Co.,* 226 F.R.D. 207, 240 (D.N.J. 2005) (Linares, J.); *see Dewey v. Volkswagon of America,* 728 F. Supp. 2d 546, 572 (D.N.J. 2010) (Shwartz, J.) ("experienced class counsel's approval is entitled to considerable weight and favors finding that the settlement is fair").  Here, as discussed below, Class Counsel, who have extensive experience in securities litigation, conducted an extensive factual and legal analysis in connection with the claims and allegations asserted in the Litigation, including the analysis of Prudential internal documents, interviews with Prudential employees, consultation with accounting and damages experts, analysis of the trading activity of the Notes during the Settlement Class Period (including the potential causes of the of the trading activity of the Notes), and legal research of the applicable law with respect to the claims asserted in the Litigation and the potential defenses thereto.  Accordingly, although formal discovery was not conducted, Class Counsel had access to sufficient information to evaluate the case and determine the adequacy of the proposed settlement.

### 5. The Proposed Settlement Reflects a Reasonable Assessment of the Strength of the Class' Claims

The Settlement should be preliminarily approved because it reflects a reasonable assessment by Class Counsel of the strengths and weaknesses of the claims in the Amended Complaint and the risks of establishing liability and damages.

### d. The Risk of Proving Falsity

As discussed below, if this case proceeded to trial, Plaintiff and the Settlement

Class would face a real risk that a reasonable jury would accept Defendants' argument

that the Registration Statement was not false or misleading at the time it was issued.[3]

### iv.   ARS Claim

Plaintiff and the Settlement faced the real risk that they would not be able to

prove their ARS claims.  As discussed above, this Court previously dismissed the ARS

claims on the grounds that "Plaintiff has not alleged facts to support a claim that, for the

quarter ended March 31, 2008, or even as of the date of the Offering, Prudential knew

that losses related to the Joint Venture Litigations were probable, or even possible, and

that Prudential had information from which it would reasonably estimate any

contingency."  Opinion [Dkt. No. 87] at 19.  In so holding, the Court also observed that

"there were no allegations" in the Original Complaint that "any settlement negotiations"

concerning the Joint Venture Litigations had occurred prior to the Offering.  *Id.* at 19 n.4.

Although Plaintiff attempted in the Amended Complaint to allege other factual bases for

Defendants' knowledge of potential liability from the Joint Venture Litigations at the

time of the Registration Statement (*see generally* Amended Complaint, ¶¶43-56),

Plaintiff had no basis to allege, and did not allege, that any settlement negotiations had

occurred by the date of the Offering.   Accordingly, Plaintiff faced a genuine risk that this

---

[3]The discussion below is a summary of Class Counsel's conclusions based upon their
legal and factual analyses.  Class Counsel will provide further detail concerning the
evidence it reviewed and the bases for its conclusion in its briefing in support of its
motion for final approval of the Settlement.

Court could again dismiss his ARS claim in ruling on Defendants' motions to dismiss the Amended Complaint.

Moreover, even assuming this Court sustained the *prima facie* sufficiency of Plaintiff's ARS claim, Plaintiff would face significant hurdles proving his ARS claim based on the test articulated by the Court in its Opinion. Defendants have vigorously argued, and produced documents that arguably demonstrate, that Defendants were notinvolved in any discussions concerning settlement of the Joint Venture Litigations prior to the Offering, and did notbelieve (and had no reason to believe) that the Joint Venture Litigations would impact Prudential's financial results *at all* (much less materially impact those results) until August, 2008 (*i.e.,*more than a month*after* the Offering) when the Joint Venture Litigations began to settle following a period of sudden, intensive negotiations between the Joint Venture and various government regulators.

### v.   OTTIClaim

Plaintiff and the Settlement Class also faced the real risk that they would be unable to prove misrepresentations or omissions concerning the "other than temporary impairments" ("OTTI") of Prudential's asset-backed fixed maturity securities. Amended Complaint, ¶¶76, 78. For example, Plaintiff alleged that Defendant Richard Carbone admitted that Prudential had misrepresented in the Registration Statement the amount of assets that were "other than temporary impaired" for the quarter ended March 31, 2008, when, during a July 31, 2008 conference call with analysts, he stated that hundreds of millions of additional assets reported as "other than temporary impaired" for the quarter ended June 30, 2008, "came primarily from declines in value of 50% or more that were in the zero to three month category at March 31[, 2008]." Defendants vigorously argued

that "Mr. Carbone's remarks can plausibly be interpreted in one way only – that the 50% or more declines in value that resulted in the additional impairment charges occurred *after* the first quarter." *See* Opinion [Dkt. 87] at 21. The Court sustained Plaintiff's claim because "the statement is susceptible to different plausible interpretations" and so "dismissal of this claim is not appropriate at this time." *Id.*

However, based on the evidence produced by Defendants and reviewed by Class Counsel, a reasonable jury could arguably conclude that Defendants' interpretation of Carbone's statement is correct. Specifically, the evidence reviewed indicates that Prudential calculated its reported OTTI based on pricing information provided by a third-party, independent asset pricing service. Moreover, the evidence reviewed indicates that Prudential used an extremely complex process to determine and confirm OTTI impairments, including several rounds of internal reviewbased on the outside asset pricing provided to Prudential, that would and could not be completed until several weeks after the close of each quarter.Accordingly, the evidence arguably indicates that the amounts reported as OTTI in the Registration Statement for the first quarter ended March 31, 2008, were accurate, and that the additional OTTI impairments reported for the second quarter ended June 30, 2008 – which were not calculated until mid-July, 2008 (*i.e.,*nearly one month *after* the Offering) – were (contrary to Plaintiff's interpretation of Carbone's statement) also appropriately recognized in the second quarter.

### vi.   Annuity / DAC Claim

Finally, Plaintiff and the Settlement Class faced the real risk that they would be unable to prove misrepresentations and omissions in the Registration Statement concerning Prudential's annuity and deferred policy acquisition cost obligations. In the

Registration Statement, Prudential represented that it was calculating its needed reserves based upon future rate of return assumptions, and that if the actual performance of Prudential's investments had been used, an additional $30 million in reserves would be necessary. Amended Complaint, ¶¶68-69. Plaintiff alleged that, contrary to Defendants' representation, up to $380 million in additional reserves were already necessary at the time of the Offering if actual performance of Prudential's assets were used. *Id.* at ¶¶70, 72. Plaintiff based this allegation in substantial part on a statement by Defendant Richard Carbone during a conference call with analysts on October 30, 2008, that the decline in the actual performance of Prudential's investments necessitating additional reserves had occurred "over the past year." Amended Complaint, ¶70. The Court similarly relied upon this statement in upholding Plaintiff's claim. *See* [Dkt. No. 87] at 15-16.

As with that OTTI issue, Defendants vigorously argued that Plaintiff misinterpreted Carbone's statement, and that the full context of Defendant Carbone's statement made clear that most of the charge was related to "the unfavorable market conditions of the past few months." *Id.* Thus, Defendants argued that the statement that the need for the additional reserves had occurred "over the past year" reflected the fact that $30 million had become necessary as of the end of the first quarter ended March 31, 2008 (which Defendants disclosed), even thoughmost of the charge did not become necessary until late in the third quarter ended September 30, 2008. *Id.* The evidence reviewed by Class Counsel arguably supports Defendants' position concerning the proper interpretation of Carbone's statement and the timing of the need for additional reserves. Specifically, based on contemporaneous, internal Prudential financial documents reviewed by Class Counsel, the evidence arguably demonstrates that that the vast bulk of

the $380 million charge that Prudential eventually took was due to sharp market declines

in the third quarter ended September 30, 2008, and not prior to the Offering.

### e.   The Risk of Proving Defendants' "Knowledge"

Even if Plaintiff and the Settlement Class were able to prove that the Registration

Statement contained misrepresentations or omissions, they also faced the real risk that

they would be unable to meet the "knowledge" standard articulated by the Court.

Specifically, this Court has indicated that in order for Plaintiff to prevail on its claim

under §§ 11 and 15 of the Securities Act of 1933, Plaintiff may have to prove that

Defendant contemporaneously *knew* at the time a Registration Statement was filed that the

Registration Statement contained false or misleading statements (or at least that the true

facts were knowable by Defendant). *See generally In re Arbinet-theexchange, Inc. Sec.*

*Litig.,* No. 05-4404, 2006 WL 3831396, at *4 (D.N.J. Dec. 28, 2006) (Linares, J.) ("To

establish a section 11 and section 12 claim, the plaintiff must plead facts to demonstrate

that the allegedly omitted facts existed and were either *known* or *knowable* at the time of

the offering.  This is because the court must evaluate whether the statement or omission

was misleading at the time it was made") (emphasis in original; citations omitted).

Moreover, in its Opinion dismissing Plaintiff's Auction Rate Securities Claims in the

Original Complaint, the Court, noted that Plaintiff had failed to allege "what was known

by Prudential at the time of issuance of the Registration Statement."  Opinion dated June

29, 2010 [Dkt. No. 87] at 19 n. 4.  As discussed above, Plaintiff faced a real risk that,

based on the evidence reviewed by Class Counsel, a jury could reasonably conclude that

the "knowledge" standard articulated by the Court is not met with respect to Plaintiff's claims.[4]

### f.   The Risk of Proving Damages

Even if Plaintiff and the Settlement Class were able to prove material misrepresentations in violation of §11, they faced a real risk that they would be unable to establish damages at trial.  Although, as a *prima facie* matter, the measure of damages under§11 is the difference between the price paid for a security pursuant to the registration statement, and the price at the time suit was filed or the security was sold,defendants may assert, as an affirmative defense, that a lower share value did not result from any nondisclosure or false statement.  *In re Constar Int'l, Inc. Sec. Litig.* 585 F.3d 774, 782-83 (3d Cir. 2009); *see* 15 U.S.C. §77k(e).  Defendants vigorously argued that they would be able to prove that any decreases in the price of the Notes were not attributable to any alleged misrepresentation in the Registration Statement.  As discussed below, the price movement of the Notes give rise to a substantial risk that Defendants would be able to prove (as an affirmative defense under §11(e)) that none of the alleged misrepresentations caused the price of the Notes to drop.

For example, Defendants made corrective disclosures concerning each of the matters at issue in this litigation on various dates throughout the Class Period.  However,

---

[4]Plaintiff argued that the mere existenceof material facts that were omitted from a Registration Statement is enough to state a *prima facie* case under §11, regardless of whether Defendant *knew* those facts (or they were knowable).  *See, e.g.,* Plaintiff's Memorandum of Law in Opposition to the Prudential Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint [Dkt. No. 74] at 10 n. 7.  However, Plaintiff faced a substantial risk that, consistent with its prior decisions and statements, the Court would reject Plaintiff's argument.

as Defendants have vigorously argued, the price of the Notes did not drop in response to most of those disclosures:

- **ARS Claim:** Prudential first disclosed the existence of litigation relating to the collapse of the ARS market on July 31, 2008, in Prudential's Form 10-Q for the quarter ended June 30, 2008.  Following this disclosure, the Note price did not move *at all* (but rather stayed at $25.11).  Next, after the close of the market on August 12, 2008, Prudential disclosed for the first time that it would record charges to income related to ARS litigation, in the amount of $125 million; the next trading day, the Note price dropped only $0.03, from $25.38 to $25.35 (0.1%).  Similarly, after the close of the market on August 15, 2008, Prudential disclosed that, rather than $125 million, it would record charges to income related to the ARS litigation in the amount of $185 million; the Note price *increased* $0.03, from $25.46 to $25.49, on the next trading day.[5] Finally, Prudential disclosed a final $120 million charge to income related to the ARS litigation after the close of the market on February 4, 2009; on February 5, Prudential's Note Price dropped only $0.21, from $19.93 to $19.72 (1%).

- **OTTI Claim:** Prudential disclosed the OTTI charges in an earnings release on Form 8-K after the market closed on July 30, 2008, and then in a conference call at noon on July 31, 2008.  As discussed above, the price of the Notes did not move at all in response to this disclosure, but remained at $25.11.

---

[5] Notably, §11(e) does not allow for the recovery of damages for the portion of a plaintiff's purchase price that was *above* "the price at which the security was offered to the public" (here, $25).  As a result, losses attributable to Note purchases above $25.00 are not recoverable.

Plaintiff and the Settlement Class also faced damages hurdles with respect to the Note price drop on October 9, 2008. On October 9, 2008, Prudential issued a press release at approximately 3:20 p.m. which contained disclosures that (i) it would be recording an additional $50 million in charges related to ARS litigation (beyond the $185 million that had already been disclosed at that point, as discussed above); and (ii) the $380 million charge for annuity reserves and deferred acquisition costs. The price of the Notes closed that day at $13.75 per Note, a decrease from the closing price of $17.65 on October 8, 2008. Although Class Counsel believe that the price of the Notes did decrease in a statistically significant amount on October 9, 2008, Plaintiff and the Settlement Class face substantial hurdles in proving damages in the amount of this drop.

First, Plaintiff's damages claim is substantially complicated by the fact that the October 9 press release was not issued until approximately 3:20 p.m. Eastern time. Most of the drop in the Note's price that day occurred prior to the issuance of the press release; the Note price only dropped by approximately a further thirty cents ($0.30)after the press release was issued. Defendants have vigorously arguedthat the Settlement Class would not be able to prove damages in the amount of the *entire* amount of the drop in the price of the Notes on October 9, 2008, were attributable to any alleged misrepresentations in the Registration Statement, but, at best, only the $0.30 decrease that occurred after issuance of the press release. *Cf. Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 342-46 (2005) (decreases in the price of securities occurring prior to corrective disclosure not caused by misrepresentations).[6]

---

[6] While the price of the Notes decreased by another $1.05 to close at $12.70 on October 10, 2008, the price of Notes significantly increased two trading days later to close at

Second, even assuming that the information disclosed in the October 9 press release somehow "leaked out" (*see Dura,* 544 U.S. at 342) prior to the issuance of the October 9 press release, the jury would have to resolve a "battle of the experts" to determine how much of the $3.90 decline prior to the press release was attributable to the "leakage." Indeed, Prudential has vigorously argued that no "leakage" occurred, and that the price decrease prior to the press release was caused by general market factors and Prudential-specific issues unrelated to the claims in the Amended Complaint.

### 6.  The Settlement Has No Other Deficiencies

Finally, the Settlement has no "deficiencies," such as "'unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys.'" *Curiale,* 2008 WL 4899474, at *4 (citation omitted). Here, there are no preferred segments of the Settlement Class. Under the proposed Plan of Allocation (Settlement Stipulation, Exhibit A-1, pages8-9), all Settlement Class Members will recover from the Settlement Fund through the uniform application of a single formula for measuring their Recognized Losses. In addition, the Settlement Stipulation does not unreasonably favor the class representative, and only permits the Lead Plaintiff to make a motion for Court approval of an award not to exceed $5,000in connection with his efforts in connection with the prosecution and settlement of the Litigation. A proposed class action settlement that permits the class representative to make a motion to the Court for approval of such an award at the final approval hearing may be preliminarily approved,

---

$18.01 per Note on October 13, 2008, which was well above the closing price of the Notes on October 8 and October 9, 2008.

and does not provide "unduly preferential treatment of class representatives." *See Smith, supra,* 2007 WL 4191749, at *3.

Nor does the Settlement provide Class Counsel with "excessive compensation." The percentage fee to be requested by Class Counsel will not exceed 25%, a percentage fee that is well-within the range of attorneys' fees awarded by courts in this Circuit.*See, e.g., In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 303 (3d Cir. 2005) ("one study of securities class action settlements over $10 million ... found an average percentage fee recovery of 31%," and "a second study by the Federal Judicial Center of all class actions resolved or settled over a four-year period . . . found a median percentage recovery range of 27-30%");*In re Corel Corp. Inc. Sec. Litig.,* 293 F. Supp. 2d 484, 498 (E.D. Pa. 2003) (awarding 33 1/3% fee); *In re Computron Software, Inc.,* 6 F. Supp. 2d 313, 322 (D.N.J. 1998) (awarding 25% fee and noting that "[a]wards utilizing the percentage of recovery method can reasonably range from nineteen percent to forty-five percent of a settlement fund").

\* \* \* \*

Class Counsel were ultimately able to negotiate a very good result for the Settlement Class, taking into account the risks, costs and delay of continued litigation, as well as their thorough analysis of evidence and the factual and legal issues in this Litigation. Accordingly, the Court should grant preliminary approval to the Settlement, permitting notice to the entire Settlement Class and an opportunity for them to evaluate the settlement.

## IV.   THE METHOD OF NOTICE IS PROPER

As part of the preliminary approval process, the Court is also requested to approve

the method of providing notice to the Settlement Class. The [Proposed] Preliminary

Approval Order submitted provides that Lead Counsel will cause the Notice of Pendency

of ProposedSettlement of Class Action and Settlement Hearing, and the Proof of Claim

and Release form (collectively, the "Notice") to be mailed to all Settlement Class

Members who can be identified from Prudential's transfer records, as well as to

brokerage firms and other nominees who regularly act as nominees for beneficial

purchasers of securities.  In addition, a summary notice ("Summary Notice") will be

published in *The Wall Street Journal* and will be available on the website of Lead

Counsel.[7] This proposed method of giving notice (similar if not identical to the method

used in countless other securities class actions) is appropriate because it provides a fair

opportunity for Settlement Class Members to obtain full disclosure of the conditions of

the settlement. The Notice will advise Settlement Class Members of the essential terms of

the settlement, set forth procedures for requesting exclusion from the Settlement Class or

objecting to the Settlement, provide specifics on the date, time and place of the final

settlement approval hearing, and provide contact information for Plaintiff's Lead Counsel

so that Settlement Class Members can obtain additional information.  Thus, the Notice

provides the necessary information for Settlement Class Members to make an informed

decision regarding the proposed settlement. The Notice also contains information

---

[7]Copies of the Notice, the Proof of Claim, and Summary Notice are attached as Exhibits
A-1, A-2 and A-3 to the [Proposed] Preliminary Approval Order; the [Proposed]
Preliminary Approval Order is attached as Exhibit 2 to the Motion for Preliminary
Approval.

regarding motion for an award of attorneys' fees, and the proposed plan for allocating the settlement proceeds among Settlement Class Members.  Lead Counsel believe the Notice fairly apprises class members of their rights with respect to the Settlement and therefore is the best notice practicable under the circumstances and should be approved by the Court.

**W.**     **The Court Should Certify The Settlement Class Under Rule 23**

In connection with granting preliminary approval of the Settlement, the Court should also certify a Settlement Class in this action, defined as follows:

> all purchasers of the 9% Junior Subordinated Notes (the "Notes") of Prudential Financial, Inc. ("Prudential") from June 24, 2008 through March 12, 2009, inclusive (the "Settlement Class Period"), pursuant to and/or traceable to the Registration Statement and Prospectus for the Offering, exclusive of Defendants, all officers and directors of any of the Defendants during the Settlement Class Period, members of the immediate family of each individual Defendant, any entity in which any Prudential Defendant has a controlling interest, any entity in which any Underwriter Defendant has a majority interest, and the legal representatives, heirs, successors, or assigns of any such excluded person. Also excluded from the Settlement Class are those Persons who timely and validly make Requests for Exclusion.

As discussed below, class certification for settlement purposes is appropriate here because the four prerequisites of Rule 23(a) are met, and the requirement of subdivision of Rule 23(b) is satisfied. Also, Defendants have stipulated to certification for settlement purposes only.

**A.**     **The Requirements of Rule 23(a) Have Been Met**

**1.**     **Rule 23(a)(1) Has Been Satisfied**

Rule 23(a)(1) requires that a class be sufficiently numerous such "that joinder of all members is impractical." Impracticability does not mean impossibility. *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 656 (D.N.J.2010).  Instead, it means that joinder

would be "extremely difficult or inconvenient." *Szczubelek v. Cendant Mortgage Corp.,*

215 F.R.D. 107, 116 (D.N.J.2003) (citing *Liberty Lincoln Mercury, Inc. v. Ford Mktg.*

*Corp.,* 149 F.R.D. 65, 73 (D.N.J.1993)). While no minimum number is required, the

Third Circuit has stated that numerosity is generally met where the moving party

"demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham,*

275 F.3d 220, 226–27 (3d Cir.2001) (citing 5 James Wm. Moore et al., *Moore's Federal*

*Practice* § 23.22[3][a] (3d ed.1999)), *cert. denied,*536 U.S. 958, 122 S.Ct. 2661, 153

L.Ed.2d 836 (2002). The Court should also take into account other factors, such as the

geographic dispersion of the anticipated class. *See Osgood v. Harrah's Entm't, Inc.,* 202

F.R.D. 115, 122 (D.N.J.2001) (citing Herbert B. Newberg & Alba Conte, 1 *Newberg on*

*Class Actions* (hereinafter *Newberg on Class Actions* ) § 3.06, at 3–27 (3d ed.1992)).

Although the exact size of the Settlement Class is not known, the facts alleged in

the Amended Complaint easily show that joinder of the claims of all Settlement Class

Members would be impracticable.  The Amended Complaint alleges that there are at least

hundreds of members of the Settlement Class located throughout the United States.

Amended Complaint,¶35.  These factual allegations amply demonstrate that the size of

the Settlement Class is sufficiently numerous that it would be impractical to join all of the

claims of Settlement Class members in one lawsuit.

### 2.   Rule 23(a)(2) Has Been Satisfied

Rule 23(a)(2) is satisfied if there are questions of law or fact that are common to

the class. Commonality exists where the named plaintiffs share at least one question of

fact or law with the grievances of the proposed class. *See In re Warfarin Sodium Antitrust*

*Litig.,* 391 F.3d 516, 527–28 (3d Cir. 2003). Indeed, "Rule 23(a)(2) does not require that

class members share every factual and legal predicate...." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Products Liability Litig.,* 55 F.3d 768, 817 (3d Cir. 1995). Thus, the commonality requirement is easily met in most cases because all that is required is one common issue. *Baby Neal for and by Kanter v. Casey,* 43 F.3d 48, 56 (3d Cir. 1994). The "commonality" requirement has been satisfied in this case, as the Amended Complaint identifies several questions of law or fact that are common to the Class, including

a.      whether the federal securities laws were violated by

Defendants' acts as

alleged herein;

b.      whether the Defendants misrepresented and/or failed to

disclose material

facts in the Registration Statement and Prospectus, as described below;

c.      whether the Individual Defendants are "controlling

persons" of Prudential

within the meaning of Section 15 of the Securities Act; and

d.      whether the members of the Class have sustained damages,

and, if so, the

proper measure of such damages

Amended Complaint,¶37.  Courts in this Circuit regularly find that such common questions are sufficient to establish commonality. *See In re Honeywell Intern. Inc.,* 211 F.R.D. 255, 260 (D.N.J. 2002) (Debevoise, J.) (common question of the "falsehood" and "materiality" of defendants' alleged misrepresentations "is more than sufficient under Rule 23(a)(2)" to establish commonality); *Varacallo,* 226 F.R.D. at 230-31 (Linares, J.)

(certifying settlement class and listing common questions, most of which involve whether defendants in various ways misrepresented, concealed or failed to disclose material information).

### 3.   Rule 23(a)(3) Has Been Satisfied

Rule 23(a)(3) is satisfied where the plaintiff's claims are "typical of the claims" of the class.  The Third Circuit has identified three considerations relevant to this inquiry: "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class." *In re Schering Plough Corp. ERISA Litig.,* 589 F.3d 585, 599 (3d Cir.2009). The "typicality" component of Rule 23 is designed to ensure that "the [class representatives] will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions* (*Prudential II* ). 148 F.3d 283, 311 (3d Cir.1998) (citing *Baby Neal,* 43 F.3d at 57),*cert. denied,*525 U .S. 1114 (1999).The typicality requirement does not require that all putative class members share identical claims or underlying facts. *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 141 (3d Cir.1998), *cert. denied*526 U.S. 1114, 119 S.Ct. 1760, 143 L.Ed.2d 791 (1999). All that is required is a strong similarity in legal theories or a showing that the claims arise from the same course of conduct. *See Prudential II,* 148 F.3d at 311– 12;*Grasty v. Amalgamated Clothing & Textile Workers Union,* 828 F.2d 123 (3d

Cir.1987) (citing 1 *Newberg on Class Actions* § 3.15, at 168 (2d ed.1985)), *abrogated in part on other grounds by Reed v. United Transp. Union,* 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989).

Here, Rule 23(a)(3) is satisfied because the claims of the proposed Settlement Class representative (the Lead Plaintiff) arise from the same misrepresentations in the Prospectus, and are predicated on the same legal theories of all other Settlement Class Members. Lead Plaintiff -- like all Settlement Class Members -- alleged that he purchased the Notes in the Offering, suffered damages due to identical misrepresentations in the Prospectus, and claim that these misrepresentations constituted violations of Section 11 of the Securities Act of 1933. As Plaintiff and the Settlement Class have the same or similar injuries from Defendants' securities law violations that arise from the same conduct, the "typicality" requirement of Rule 23(a)(3) is satisfied. *See, e.g. Varacallo,* 226 F.R.D. at 222-23 (Linares, J.) ("Since the Class Representatives and Class Members assert claims for similar courses of fraudulent conduct . . . the typicality requirement of Rule 23(a)(3) is fulfilled"); *In re Res. Am. Secs. Litig.,* 202 F.R.D. 177, 187 (E.D. Pa. 2001).

### 4.      Rule 23(a)(4) Has Been Satisfied

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." In the Third Circuit, Rule 23(a)(4) is satisfied if the plaintiff's attorney is qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff does not have interests antagonistic to those of the class. *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *see Prudential II,* 148 F.3d at 312;*Georgine v. Amchem Prods., Inc.,* 83 F.3d 610, 630 (3d Cir.1996), *aff'd sub*

*nom. Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

Lead Plaintiff has satisfied the "adequacy" requirements. First, Class Counsel is comprised of competent class action attorneys that are highly experienced in securities litigation. *See* Exhibits 1 and 2, attached hereto (Izard Nobel and Lite DePalma Greenberg firm resumes). Moreover, Class Counsel have done extensive work to date in identifying and investigating potential claims in this action, preparing a complaint that properly alleged securities laws violations against Defendants, vigorously opposing Defendants' motions to dismiss, and obtaining a very good settlement for the Settlement Class through their vigorous advocacy.[8]

Second, there are no conflicts between the Lead Plaintiff and the other Settlement Class Members. As discussed above, Lead Plaintiff and the members of the Settlement Class assert the same legal claims, and their losses arise out of the same conduct and securities law violations by Defendants.Given the qualifications of Class Counsel and the absence of any conflict, the adequacy requirement has been satisfied.

### B.     The Requirements Of Rule 23(b)(3) Have Been Satisfied

Plaintiffs have also satisfied the requirements of Rule 23(b)(3). First, common questions of law or fact predominate over any purported individual questions.  Second, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1.     Common Questions of Law or Fact Predominate

---

[8] For these reasons, Izard Nobel LLP and Lite DePalma Greenberg, LLC have represented, and will continue to represent, the interests of the Settlement Class fairly and adequately, within the meaning of Fed. R. Civ. P. 23(g)(1) and (4).

As the Supreme Court has observed, the predominance test is "readily met in certain cases alleging consumer or securities fraud." *Amchem Prods. v.Windsor,* 521 U.S. 591, 623 (1997). Here, common questions of law or fact predominate over any potential individual questions within the meaning of Rule 23(b)(3) because there are many common issues of fact or law in this case as discussed above. AmendedComplaint,¶37. *See Varacallo,*226 F.R.D. at 231-32 (Linares, J.) (Rule 23(b)(3) satisfied in case involving nationwide misrepresentations and omissions because "in cases where it is alleged that the defendant made similar misrepresentations, non-disclosures, or engaged in a common course of conduct, courts have found that conduct to satisfy [both] the commonality and predominance requirements").Moreover, common issues predominate in this case because there is no reliance requirement under Section 11 of the Securities Act of 1933. *Constar,* 585 F.3d at 784-85 ("reliance is *not* an element under § 11") (emphasis in original).Accordingly, there is noneed for Settlement Class Members to prove individualized reliance on the Defendants' misrepresentations in the Prospectus.*Id.* ("Since reliance is irrelevant in a §11 case, a §11 case will never demand individualized proof as to an investor's reliance or knowledge"). Finally, where, as here, "common issues which determine liability predominate," calculating damages on an individual basis does not prevent an otherwise valid certification. *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 456 (3d Cir.1977) (citations omitted).

## 2.   A Class Action is Superior to Individual Actions

A class action is clearly the superior method for resolving the claims alleged in the Amended Complaint. Rule 23(b)(3) provides four nonexclusive factors to guide the Court in determining "superiority."As discussed below, consideration of the factors

enumerated in Rule 23(b)(3)(A)-(D) confirm that a class action is the superior method for the fair and efficient adjudication of the claims alleged in the Complaint.

### a.   Rule 23(b)(3)(A)

The first factor (the interest of each class member in controlling the prosecution of separate actions) supports the superiority of a class action here. Rule 23(b)(3)(A).  In a case with thousands of claimants, a class member's interest in having the claims of the class aggregated in a single class action lawsuit substantially outweighs the interest of a class member in individual control of the litigation. As the Supreme Court has observed, class actions permit plaintiffs to pool claims which would be uneconomical to litigate individually, and "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

### b.   Rule 23(b)(3)(B)

The second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) also supports the conclusion that a class action is the superior method for the resolution of the claims in the Amended Complaint, Plaintiff's counsel are not aware of any pending litigation in which the claims at issue in this case are being separately pursued by any class members.

### c.   Rule 23(b)(3)(C)

Consideration of the third factor (the desirability of concentrating the litigation of the claims in the particular forum) further demonstrates that a class action is superior, as Prudential has its corporate headquarters in this District, and most of the documentary evidence is located within this District.

### d.   Rule 23(b)(3)(D)

Finally, an analysis of the fourth factor (the difficulties that are likely to be encountered in the management of a class action) confirms the superiority of having the claims of the Class resolved in a class action. In this case, all of the claims alleged in the Complaint are governed by a single federal law (Sections 11 and 15 of the Securities Act of 1933). Similarly, as discussed above, there is not "reliance" requirement under Section 11 of the Securities Act of 1933, so there will be no need to resolve whether each Settlement Class Member relied on Defendants' alleged misrepresentations in the Prospectus. As there is no reason to believe that the prosecution of the claims of Settlement Class Members in a single class action will create *more* management problems than the alternative (*i.e.,* the prosecution of thousands of separate lawsuits by each class member), class adjudication is clearly superior to any other form of adjudication. Finally, as explained in *Amchem,* when presented "with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed.R.Civ.P. 23(b)(3)(D), for the proposal is that there be no trial." *Amchem,* 521 U.S. at 620. Thus, there are no manageability problems here.

Accordingly, Plaintiff requests that the Court preliminarily certify the Settlement Class for settlement purposes only.

## VI.   PROPOSED SCHEDULE OF EVENTS

The Court's entry of the [Proposed] Preliminary Approval Order would, among other things, (i) direct notice of the Settlement to all members of the Settlement Class, (ii) schedule a hearing date to consider whether the Settlement should be finally approved as fair, reasonable and adequate, and whether the Fee and Expense Motion should be

granted, and (iii) set deadlines for Settlement Class Members to object or exclude themselves from the Settlement.

Class Counsel proposes the following schedule:

- Notice, and Proof of Claim and Release mailed to Settlement Class Members (the "Notice Date") – twenty-one (21) business days after the entry of the Preliminary Approval Order (Preliminary Approval Order, paragraph 8);

- Publication of Summary Notice – seven (7) business days after the Notice Date (Preliminary Approval Order, paragraph 9);

- Deadline for filing papers in support of the Settlement, the Fee and Expense Motion, and Lead Plaintiff Expense Motion – twenty-four (24) days before the Final Hearing Date (Preliminary Approval Order, paragraphs 13-14);

- Deadline for requesting exclusion from the Settlement or objecting to the Settlement, the Fee and Expense Motion, and Lead Plaintiff Expense Motion -- fourteen (14) days before the Final Hearing Date (Preliminary Approval Order, paragraphs15-16);

- Deadline for filing Reply papers in support of the Settlement, the Fee and Expense Motion, and Lead Plaintiff Expense Motion, if any – seven (7) days before the Final Hearing Date (Preliminary Approval Order, paragraph 17); and,

- Final Hearing Date – assuming that the Court enters the [Proposed] Preliminary Approval Order by August 5, 2011, the parties request a final approval hearing date on or after November 14, 2011 (Preliminary Approval Order, paragraph 19).

## VII.   CONCLUSION

For the reasons set forth above, the proposed Settlement should be preliminarily approved, the Court should preliminarily certify the Settlement Class, preliminarily appoint Lead Plaintiff Paul J. Perry, Trustee of the Paul J. Perry Revocable Trust, as representative of the Settlement Class; and preliminarily appoint Izard Nobel LLP as Lead Counsel and Lite DePalma Greenberg, LLC as Liaison Counsel, for the Settlement Class, pursuant to Fed. R. Civ. P. 23(g)(1) and (4).

Dated: August 4, 2011                  **LITE DEPALMA GREENBERG, LLC**

                         By:    */s/ Joseph J. DePalma*
                                Allyn Z. Lite (alite@litedepalma.com)
                                Joseph J. DePalma (jdepalma@litedepalma.com)
                                Katrina Carroll (kcarroll@litedepalma.com)
                                Mayra V. Tarantino (mtarantino@litedepalma.com)
                                Two Gateway Center, 12th Floor
                                Newark, NJ 07102-5003
                                Telephone: (973) 623-3000
                                Facsimile: (973) 623-0858

                                *Liaison Counsel for Plaintiff*

                                **IZARD NOBEL LLP**
                                Robert A. Izard
                                Jeffrey S. Nobel (jnobel@izardnobel.com)
                                Mark P. Kindall
                                Seth R. Klein
                                Nancy A. Kulesa
                                29 South Main Street, Suite 215
                                West Hartford, CT  06107
                                Telephone: (860) 493-6292
                                Facsimile: (860) 493-6290

                                *Lead Counsel for Plaintiff*

287894 v1                                33